THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID ROSE, Defendant-Appellant.

Second District   No. 2—88—0646

Opinion filed May 23, 1990.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, David Rose, was indicted on two counts of aggravated battery under sections 12—4(a) and 12—4(b)(10) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), (b)(10)) and found guilty of both counts. Defendant appeals his convictions on the ground that he was denied a fair trial when the trial court admitted into evidence facts relating to a prior offense. The issue is whether the prior offense established a common design or *modus operandi* relevant to the offenses with which defendant was charged.

The basis of the charges arose from the discovery of the body of Emma Kennedy, defendant's grandmother, in their apartment on July 27, 1987. She was over the age of 60 and suffered great bodily harm. Mrs. Kennedy, however, had no recollection of who beat her or how or when she was beaten. The State sought to introduce evidence, which defendant sought to prevent by a motion *in limine*, that defendant had slapped her about 10 days previous to July 27, 1987, then continued to eat his supper while she blindly crawled on the floor searching for her glasses. On July 27, 1987, with his grandmother's bloody body lying on the couch, defendant ate a bologna sandwich. The trial court denied the motion *in limine* and post-trial relief on the ground that defendant's actions indicated a remarkable indifference to the plight of the victim. Defendant was charged with battery for the slapping incident under a separate indictment.

At trial, defendant maintained that robbers had broken into his apartment and had beaten his grandmother. The State's first witness was Cynthia Gorman, who was defendant's sister and Mrs. Kennedy's granddaughter. She testified that defendant and Mrs. Kennedy had lived together for two to three years. On July 17, 1987, Gorman and Mrs. Kennedy went shopping together. Mrs. Kennedy had a bruise on her face and a red eye and had trouble walking. After receiving a tel-

ephone call on July 27, 1987, Gorman summoned the police and went with them to defendant's apartment. Defendant opened the door for her and she entered. Gorman saw Mrs. Kennedy lying on the sofa covered with blood, and although she appeared to be dead, Mrs. Kennedy heard Gorman and called for her. The blood had dried and was caked to her body and clothes. Her head rested on her purse, and she was lying on her cane. Before the paramedics took her to the hospital, Mrs. Kennedy had Gorman take over $400 from her brassiere and over $100 cash and checks from her purse. Gorman testified there were bloodstains on the carpet, kitchen walls and kitchen floor and that defendant said he tried to clean up the blood.

Emma Kennedy was the next witness. She testified as follows:

"Q. [Assistant State's Attorney]: Do you remember an incident that happened in your home about a week or two prior to July 27th?

A. Yes, I had prepared supper for my grandson, and he was eating, and he was a little sassy to me. I was correcting him, and it made him madder. He got up and slapped me across the face.

Q. Did he slap you across both sides of the face?

A. Yes.

Q. And he did that with the open hand?

A. With the open hand.

Q. What happened when he did that?

A. Well, I fell to the floor and lost my glasses, and I had to look for them.

* * *

Q. Now, when your glasses were knocked off, what did you do?

A. I bent down on the floor and looked for them.

Q. Were you on your hands and knees?

A. Yes.

Q. About how long did it take before you found your glasses?

A. Not long. Just a few minutes.

Q. And when you put your glasses back on, do you remember what David was doing?

A. He finished eating his meal.

Q. He was sitting back at the table then?

A. Yes."

No other details of the slapping incident were elicited. She also testified that she had no idea of what happened to her on July 27, 1987.

Dirk Phillip, an officer of the City of North Chicago police department, testified that he was called to the scene of defendant's apartment around 4:45 p.m. on July 27, 1987. He noticed defendant had a bruised and swollen right hand. Defendant told him it had been caught in a door. Phillip later took defendant to a hospital where defendant told a nurse he had dropped a piece of wallboard on his hand.

Sergeant Pedrin of the City of North Chicago police department arrived at the apartment at approximately 4:45 p.m. Defendant told him that when defendant came into the apartment Mrs. Kennedy was already lying on the floor, so he proceeded to clean the apartment and then put her on the couch. Defendant said that he had arrived at approximately 3:30 p.m. and had cleaned for two hours, then sat down and ate a bologna sandwich. Defendant stated when he had left the apartment at 8:30 that morning, Mrs. Kennedy was fine. He had gone to the food store to buy cigarettes, then walked through the park for a few hours. Sergeant Pedrin further testified that the ground-floor security door was in good order and that the upstairs apartment door was not broken and did not show signs of forced entry. Because defendant claimed the apartment had been burglarized and a check stolen, the sergeant searched the rooms along with a police photographer who took photographs which were admitted into evidence. Coins, bills and blank checks were on the kitchen counter and table. All the dresser drawers were closed. There were bankbooks and a passport within easy access. The sergeant noticed defendant's bruised hand, and defendant told him he had hurt it while cleaning brushes.

The State and defendant then stipulated that X-ray photographs of Mrs. Kennedy revealed a fracture of her left forearm, the fifth finger of her right hand, several facial bones, and four ribs.

Dr. Steinwald testified that he treated Mrs. Kennedy on July 27, 1987, for a laceration on her head. The gash was eight inches long and so deep that it divided part of the lining of the bone and divided the muscles of the forehead. The blood was dry and caked, indicating the wound was a day old or possibly two days old.

After the State rested, defendant presented a stipulation that the Northern Illinois Police Crime Laboratory had examined Mrs. Kennedy's cane for fingerprints and the fingerprint that appeared on it did not match those of defendant. Defendant presented no other evidence. The jury was instructed on the elements of aggravated battery and the use of circumstantial evidence. They were also given a limiting instruction regarding the prior offense.

The jury found defendant guilty of both counts, and the court sen-

tenced him to 10 years' imprisonment. Defendant appeals and contends that the evidence concerning the slap was inadmissible.

Evidence of other crimes of wrongful conduct is not admissible to show the defendant's character or propensity to commit crimes or wrongful acts. Where evidence has no value beyond the inference that a defendant has a propensity for the crime charged, the evidence is excluded. The underlying rationale is that such evidence is objectionable not because it has no appreciable probative value, but because it has too much value. "The law distrusts the inference that because a man has committed other crimes, he is more likely to have committed the crime charged." (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484.) However, evidence of other crimes is admissible if it is relevant to proving any other material issue. (*People v. Bean* (March Term 1990), No. 65062, slip op. at 26.) Thus, evidence of the commission of other crimes is admissible if it proves *modus operandi*, knowledge, intent, absence of mistake, a defendant's state of mind, placement of a defendant in proximity to time and place of the crime, identification of a weapon, consciousness of guilt, or that the crime charged was part of a common design, scheme or plan of the defendant. *Kimbrough*, 138 Ill. App. 3d at 484-85.

The State contends the evidence was properly admitted because it revealed the *modus operandi* of the alleged attacker. *Modus operandi* refers to a pattern of criminal behavior so distinct that separate crimes are recognized as the work of the same person. If evidence of other crimes is offered to prove *modus operandi*, there must be some clear connection between the other crime and the crime charged which creates a logical inference that if the defendant committed those acts, he may have committed the act at issue. The inference is created when both crimes share peculiar and distinctive common features so as to earmark both crimes as the handiwork of the defendant. *Kimbrough*, 138 Ill. App. 3d at 486-87.

The State offers the fact that defendant ate while his grandmother was in distress as proof of a *modus operandi*. While this evidence may prove defendant's callous indifference to his grandmother's plight, it does not prove that he hit his grandmother every time he ate a meal. The State cannot reasonably maintain that defendant had beaten his grandmother every time he ate a bologna sandwich. Moreover, the most this evidence may prove is that he would have been indifferent to her plight whether burglars had beaten her or whether he had beaten her. Therefore, the evidence cannot be admitted on the ground of *modus operandi*.

The *modus operandi* exception is often confused with the

exception of common design. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 999.) Common design refers to a criminal scheme of which the crime charged is only a part. (106 Ill. App. 3d at 999-1000.) The several crimes must have some degree of identity between the facts of the crime charged and those of the other offense in which the defendant was involved. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 185.) For example, other offenses may be admitted to prove a defendant had a scheme to harass a victim in order to prove who instigated the crime being prosecuted. (*People v. Kissinger* (1983), 116 Ill. App. 3d 826, 831.) However, the State did not present any evidence that the defendant had a common scheme of beating, harassing or dominating his grandmother. Only the single episode of the slap was presented. As such, the only probative value of the evidence was to show defendant's possible willingness to hit his grandmother. Although common design is frequently relevant to show the motive for the crime charged (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 163 (4th ed. 1984)), the State never made an argument regarding defendant's motives. We do not decide that such evidence could never be admitted, for prior acts of domestic violence are very important for proving a pattern of harassment, intimidation or domination of a family member. (*People v. Holland* (1973), 11 Ill. App. 3d 591, 595-96.) However, the State could not prove any such common design by presenting what, based only on the evidence in the record, was an isolated incident. Also, the evidence was not relevant to prove recklessness or other element of the crime. (See *People v. Milner* (1984), 123 Ill. App. 3d 656, 662; *People v. Platter* (1980), 89 Ill. App. 3d 803, 822.) Moreover, the fact that defendant was callously indifferent to his grandmother's plight had already been dramatically proved when he sat, cleaned and ate while his grandmother lay bleeding from injuries caused by the crime with which he was charged. Thus it was error to admit the evidence because it was unduly prejudicial to defendant while not probative of any common design or *modus operandi*.

■ However, we do not believe the error was sufficient to reverse the judgment. The court gave a limiting instruction, reiterated in the State's closing argument, which restricted the purpose for which the jury could consider the evidence. Thus the possible prejudice was reduced. The evidence concerning the slap was only a slight portion of the trial, and the evidence was concentrated on the offense at issue rather than on the previous incident. (Compare *People v. Barbour* (1982), 106 Ill. App. 3d 993, 1001.) Also, the evidence adduced regarding the slap was not overly detailed or embellished so as to in-

flame the jurors' sympathy.

Moreover, it does not appear that justice was denied or that the verdict resulted from such error because there was no reasonable theory of innocence consistent with the evidence presented. (*People v. Garcia* (1981), 95 Ill. App. 3d 792, 799.) Defendant contended that burglars had beaten his grandmother, but there was no evidence that any valuables, her purse, the cash therein, the blank checks, bankbooks, coins or passports were taken. Also, the security door worked, and there was no sign of forced entry or sign of burglars searching through the drawers. Although defendant admitted that he had lost a key to the apartment, there was no evidence that anyone else had access to enter the apartment. The jury properly rejected the burglary hypothesis as unreasonable. *Holland*, 11 Ill. App. 3d at 595.

■ No other element of defendant's admissions bore any credibility. He stated that his grandmother was fine at 8:30 that morning, but all the witnesses testified the blood was dry that afternoon, a fact which led the treating physician to conclude the injury was one or two days old. The blood was dry, but defendant's efforts to clean the apartment were fresh. He made three implausible stories to explain his swollen and bruised hand. A defendant's false exculpatory statements are admissible to establish his consciousness of guilt. (*People v. McQueen* (1983), 115 Ill. App. 3d 833, 837.) The defendant did not seek help for his grandmother, which would have drawn attention to the crime, but instead attempted to conceal it. Such conduct is not indicative of an innocent bystander to a crime. Thus, there was abundant evidence of guilt, and having considered the totality of the evidence presented, we conclude that a trial without the evidence of the slap would produce no different result. (*People v. Warmack* (1980), 83 Ill. 2d 112, 128-29.) Thus the admission of the evidence of a prior offense was not reversible error.

For the above reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.