(text box: 1) NO. 5-02-0238

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Massac County.

)

)  No. 99-CF-121

)

HURSHEL E. LENLEY, )  Honorable

)  Terry J. Foster,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

"[P]roof of other crimes, unrelated to those alleged in the charging instrument, cannot be introduced merely to show a propensity for criminal wrongdoing."  
People v. Hale
, 326 Ill. App. 3d 455, 462, 762 N.E.2d 59, 65 (2001) (citing 
People v. Lindgren
, 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242 (1980)).

This well-settled principle, as a general rule, bans rather persuasive evidence of someone's guilt from the State's arsenal of proof.  However, if a prosecutor can find some legitimate issue that presents a need to admit evidence of other criminality, the State can use it, even though a clear and unmistakable message about an accused's criminal propensities resonates from its admission.  Several recognized exceptions to the rule allow other-crimes evidence to be heard.

Everyone understands the persuasive potential that proof of other criminality packs, but those charged with the task of proving people guilty beyond a reasonable doubt understand it best.  Whenever evidence of other criminal conduct surrounds a particular accused, expect a universal prosecutorial response.  The prosecution's 
modus operandi
, given its intent to convict, is quite certain to be motivated by a common design to introduce other-crimes evidence under one of the exceptions to the general rule.  Make no mistake about it, any prosecutor worth his salt will try very hard to persuade a judge that reason other than proof of criminal propensity exists, in order to introduce evidence of extraneous criminality.  There simply is nothing better than full exposure of an accused's evil ways. 

We are presented a case where the prosecution was allowed to present evidence about three burglaries other than the one for which the defendant stood trial.  The trial judge's decision to permit the other-crimes evidence as proof of the defendant's intent, motive, and design, in addition to showing an absence of mistake, is challenged in this appeal.  

While evidence of three other burglaries was ostensibly admitted to prove four things, the defendant's intent, motive, and design, in addition to an absence of mistake, the evidence necessarily conveyed a message that the defendant harbored a penchant for burglary and theft.  Indeed, this was the message driven home by the prosecutor during his summation.  No one tried to explain how proof of three other burglaries served to establish intent, motive, design, or a lack of mistake.  Rather, the evidence of other criminality was linked to an argument about the kind of person with whom the Massac County jurors were dealing.  Having recounted the evidence establishing four burglaries, the State's Attorney argued that the defendant was the kind of person who would come to southern Illinois to gamble and, when he wagered himself short of money, would fund his habit by roaming rural Massac County in search of unlocked barns, garages, and sheds to burglarize.  The argument was a succinct picture of what the evidence adduced at the defendant's trial conveyed.

The defendant stands convicted of the November 16, 1999, burglary of a barn owned by a man named Harry Foss.  The defendant also stands convicted of the theft that he committed during the course of that burglary.  He currently serves a 365-day jail sentence for theft, along with a five-year prison term for burglary, the punishment imposed upon the Massac County jury verdicts.  

On appeal, we are asked to overturn the convictions based upon the admission of the other-crimes evidence.  The following is the defendant's argument.  

The admission of evidence about three burglaries, other than the burglary at issue, resulted in verdicts predicated upon evidence of the defendant's criminal propensity for burglary and theft.  There was no other reason to admit evidence about the three other burglaries.  While the State convinced the trial judge that the other-crimes evidence should be admitted to show intent, motive, design, and absence of mistake, none of those questions were placed at issue by the evidence presented at the defendant's trial.  There was no question about the intent with which someone entered Harry Foss's barn.  There was no question about any of the earlier burglaries serving as the motive for this one.  There was no claim made that the barn was entered under some mistaken belief that the defendant had authority or consent to enter.  And the burglary of the barn was a separate and distinct crime.  Whoever entered the barn did so without some larger criminal objective to achieve.  There was no common scheme or design being fulfilled by the burglary for which the defendant stood trial.  

It follows that the State was permitted to introduce evidence about three other burglaries to show the defendant's intent, motive, design, and absence of mistake when the evidence was neither pertinent to nor helpful for the resolution of any of those things.  Without a legitimate purpose to admit it, the other-crimes evidence was improper.  It only served to demonstrate the defendant's criminal propensity for burglary and theft.   Therefore, the defendant deserves a new trial. 

The State counters this argument by insisting that the evidence about the other three burglaries was properly admitted to show intent, motive, design, and absence of mistake.  As a backup position, the State asks us to consider any error in the admission of the other-crimes evidence as harmless error.   

The facts of the case are as follows. 

Between October 26, 1999, and November 16, 1999, the rural areas surrounding Metropolis, Illinois, were struck by a rash of tool thefts from workshops housed in unlocked barns, garages, and farm sheds.  Farmers living on the outskirts of Metropolis discovered numerous tools missing from their unsecured workshops during that three-week time span.   Metropolis is a relatively crime-free town that lies on the northern bank of the Ohio River, at the southernmost tip of the state, a town that boasts two things that set it apart from most other southern Illinois communities.  First, it is home to a gambling boat docked on the Ohio River.  The casino provides a venue for those interested in games of chance.  In the fall of 1999, the defendant left his Decatur, Alabama, home and drove to Metropolis in order to place some wagers.

In addition to the riverboat gambling casino, Metropolis is home to a bronze statute of the man of steel.  This symbol of truth, justice, and the American way rests but a short distance from the J & D Jewelry and Loan, an establishment that the defendant visited four times between October 26, 1999, and November 16, 1999.  On the first three occasions, he marketed a variety of stolen tools from the back of his pickup.  Someone had pilfered the tools from a rural workshop shortly before each of the defendant's three arrivals at the pawn shop.  When the defendant arrived with a pickup load full of tools for a fourth time, the proprietor of the J & D Jewelry and Loan told him about a visit from the sheriff and the victim of a burglary.  The burglary victim found one of his missing tools at the pawn shop.  It was one of the tools purchased from the defendant.  The defendant was also told that the sheriff was aware of all the defendant's earlier transactions.   

The defendant promptly left Illinois and returned to his home in Decatur, Alabama.   More than two years passed before his arrest in Alabama.      

At the trial, four farmers, three from Metropolis and one from close-by Vienna, Illinois, were permitted to testify that their unlocked barns or sheds had been unlawfully entered by someone who removed numerous workshop tools.  In addition, the proprietor of the J & D Jewelry and Loan was permitted to testify about every transaction that took place between himself and the defendant, all of which involved the pawn shop's purchases of items removed from the four unlawfully entered workshops.     

Here is a look at how the State presented its case.  

The State's first witness was Jeff Jordan, a Johnson County deputy sheriff, who testified about his arrest of the defendant in Decatur, Alabama, and about a gratuitous comment made by the defendant during the trip back to Illinois.  The defendant, who knew that he was returning to face burglary and theft charges, speculated out loud, "[The charges] must be about the barn that I went into."

The State then called Don Fairfield, the owner of the J & D Jewelry and Loan.  Fairfield told the jury that the defendant first appeared at his pawn shop on October 26, 1999, driving a pickup truck loaded down with tools.  Fairfield explained how he surveyed everything that the defendant wanted to sell and, thereafter, purchased a Campbell-Hausfield 4.5-horsepower air compressor, a Dewalt 4.5-horsepower hand grinder, and a Black & Decker Sawzall.  He also purchased a number of hand tools.  

Fairfield had insisted upon a seller's bill of sale, which the defendant executed in Fairfield's presence.  He identified this October 26, 1999, document and testified that he had witnessed the defendant sign it.  The bill of sale was introduced into evidence.  

The date on which the bill of sale was executed and the recorded list of items sold coincided with the burglary of Arthur Meinders' unlocked workshop on October 26, 1999.  Someone had entered Meinders' work shed located on the edge of Metropolis and removed a Campbell-Hausfield 4.5-horsepower air compressor and a Dewalt 4.5-horsepower hand grinder shortly before the defendant sold them to Fairfield.    

Fairfield identified a second bill of sale executed by the defendant on October 26, 1999.  The date and the recorded item, a Sawzall, coincided with Randall Conley's report of items missing from his Vienna, Illinois, farm that very day.  The Sawzall was recovered from the J & D Jewelry and Loan and identified by Randall Conley.  

According to Fairfield, the defendant reappeared at the J & D Jewelry and Loan on November 4, 1999.  The defendant again had his pickup truck loaded with tools.  Fairfield looked them over and purchased a Craftsman cordless drill, a Sawzall, and a Craftsman jigsaw.  He also bought other assorted hand tools.  Fairfield identified a November 4, 1999, bill of sale that he had witnessed the defendant execute.  It was admitted into evidence. The date on the bill of sale and the recorded list of the items sold proved significant to another rural burglary.  At some point in time on November 4, 1999, someone had entered Steve Foss's unsecured workshop on the outskirts of Metropolis and removed a Craftsman cordless drill, a Craftsman jigsaw, and a host of other hand tools.  

Fairfield then testified about the items taken in the burglary and theft for which the defendant stood trial.  He told the jury that the defendant drove up with another pickup load full of tools on November 16, 1999.  Fairfield inspected the load and purchased a jigsaw, another drill, and a host of other hand tools.  Another bill of sale was executed.  Fairfield identified the November 16, 1999, document and testified that he had witnessed the defendant sign it on that date.  It was introduced into evidence.

The date on the bill of sale and the listed items again coincided with a reported burglary.  At some point in time on November 16, 1999, someone had entered Harry Foss's unlocked work shed, just outside of Metropolis, and had pilfered two drills, a saw, and a hand grinder.  

Fairfield explained how the sheriff came by the pawn shop as a part of his investigation into the sudden, and uncommon, rash of rural burglaries in Massac County.  Harry Foss accompanied the sheriff and was able to find one of his tools in Fairfield's possession.   

Fairfield testified that when the defendant reappeared with another load of used tools, he confronted the defendant.  According to Fairfield, when he told the defendant that he needed to straighten things out with the sheriff, the defendant assured him that he would, indicating that the items had been purchased from someone else.  The defendant told Fairfield that everything would be taken care of and that he would return in an hour to transact more business.  

Finally, Fairfield testified that the defendant did not return and that Fairfield did not lay eyes on the defendant again until he walked into the courtroom. 

The State's next witness was Randall Conley, who identified the Sawzall taken from his unlocked rural workshop on October 26, 1999.

The State called Bradley Meinders, the son of Arthur Meinders, to identify his father's grinder and to describe the air compressor, which was never recovered after it disappeared from his father's workshop on October 26, 1999.

The State called Steve Foss.  Foss testified about the November 4, 1999, burglary of his workshop.  Foss recovered some of the tools from the J & D Jewelry and Loan.

The State called Harry Foss.  Foss testified about the November 16, 1999, burglary of a workshop housed in his barn.  He told the jury that a lot of tools were taken.  He identified the only one recovered, a Craftsman drill that was retrieved from the J & D Jewelry and Loan.

The State's final witness was Ted Holder, chief deputy for the Massac County sheriff's department.  He testified about a written statement taken from the defendant on September 12, 2001.  Holder read its entire contents to the jury.  In the statement, the defendant claimed to have purchased the tools that he presented for sale to Don Fairfield.  According to the defendant, a hard-luck fellow gambler at the Metropolis riverboat casino sold them to him for $100.  In his written statement the defendant laid claim to only one transaction with Don Fairfield. 

Holder gave his views about the statement's veracity.  He pointed out that the defendant made no mention of the air compressor, a piece of equipment that one man could barely handle, much less forget handling.  Holder explained how the defendant had insisted upon only one visit to the J & D Jewelry and Loan and how he readily acknowledged the bill of sale for that visit.  Thereafter, Holder confronted the defendant with the three other bills of sale that also bore the defendant's signature.  Holder told the jury that after being shown all the bills of sale, the defendant stopped the interrogation and refused to talk any further.
(footnote: 1)
 The foregoing was the State's formidable evidence of the defendant's guilt.   

After the State rested, the defendant rested.     

We return to the long-standing rule of evidence that prohibits proof of an accused's other crimes.  "Evidence of crimes for which a defendant is not on trial is inadmissible if relevant merely to establish his propensity to commit crime."  
People v. Thingvold
, 145 Ill. 2d 441, 452, 584 N.E.2d 89, 93 (1991).  If the State has no other legitimate reason for proving extraneous criminality, we will not countenance the use of such proof.  
People v. Bobo
, 278 Ill. App. 3d 130, 132-33, 662 N.E.2d 623, 625-26 (1996).  "Even where the State has good reason to introduce other-crimes evidence, we acknowledge that an inference of criminal propensity will necessarily accompany its use and will require the trial judge to weigh the probative value of such evidence against its potential for producing an improper prejudicial effect, before deciding whether to allow for its admission."  
Hale
, 326 Ill. App. 3d at 462, 762 N.E.2d at 65 (citing 
People v. Heard
, 187 Ill. 2d 36, 58, 718 N.E.2d 58, 71 (1999)).  We will not disturb a conviction, based upon the admission of other-crimes evidence, unless the trial judge's admission of that evidence constitutes a clear abuse of discretion.  
Thingvold
, 145 Ill. 2d at 452-53, 584 N.E.2d at 93-94.

On appeal, the State defends the admission of the other-crimes evidence with the position that evidence of all four burglaries was necessary to show the defendant's intent, motive, and design.  In addition, the State maintains that the other criminality served to discount the possibility that the burglary of Harry Foss's barn was the product of an innocent mistake. 

The State's argument mirrors the arguments tendered by the State's Attorney, when he convinced the trial judge to allow the other-crimes evidence.  The trial judge accepted the State's Attorney's explanation for why the jury needed to know about the three other burglaries and admonished jurors several times about the limited reasons for the other-crimes evidence.  At the close of the case, the trial judge again admonished the jury about the limited purpose such evidence served and about how jurors should treat that evidence.  He gave the following instruction:

"Evidence has been received that the defendant has been involved in offenses other than those charged in the information.  This evidence has been received on the issues of the defendant's intent, motive, design[,] and lack of mistake and may be considered by you only for that limited purpose.  It is for you to determine whether the defendant was involved in those offenses and[,] if so, what weight should be given to this evidence on the issues of intent, motive, design[,] and lack of mistake."

Initially, we note that the admission of evidence establishing the commission of three burglaries, other than the one for which a defendant stands trial, is a step that should not be taken lightly.  Since it harbors such potential for juror misuse, the admission of evidence about three burglaries other than the burglary at issue should find support in sound reason for its need and in how it is relevant to prove something other than a defendant's penchant for crime.  

The first step in deciding whether to admit such evidence is to define what is truly at issue during the trial.  The reasons for the admission of evidence proving uncharged criminality need to be linked to contested issues.  The tender of four recognized exceptions to the general ban of such evidence, without an articulation of how those exceptions relate to proof of the charge at hand, is unacceptable.  

The only contested issue in this case was identity.  The jury was being asked to decide who committed the unlawful entry of Harry Foss's barn and who purloined the tools that were kept there. 

The intent exception to the general ban on other-crimes evidence arises in the context of defenses that challenge the intent, or the state of mind, with which the defendant commits some act.  Here is an example of how evidence of other crimes would prove admissible to show intent.  

The hypothetical charge on trial is shoplifting.  Wal-Mart security arrested this defendant after he exited Wal-Mart with an item of merchandise for which he did not pay.  The defendant immediately claimed, and maintains at the trial, that he forgot about the item that he pocketed and that he fully intended to pay for the item when he removed it from the shelf.  Under such a circumstance, the State could properly introduce security tapes from other stores that record the defendant shoplifting from them, because the defendant's other ventures are relevant on the question of the defendant's intent when he exited Wal-Mart.  The other crimes tend to show that when the defendant removed merchandise from a Wal-Mart shelf, pocketed it, and walked out of the store, he did so with the intent to permanently deprive Wal-Mart of the item and its worth.  

Here, the intent with which someone entered Harry Foss's barn simply was not at issue.  Whoever entered the barn left with a host of tools that the defendant ended up selling to the local pawn shop.  The defendant did not claim that he entered the barn and took a tool only to fix a flat tire and that when he did so he fully intended to return it.  The jury was not being asked to wrestle with the intent, or the state of mind, with which the defendant entered Harry Foss's barn.  Nor was the intent to permanently deprive Harry Foss of his tools and their worth being contested.  Thus, the other burglaries were not legitimately admitted to help prove a question of intent.  

The motive exception to the general ban on other-crimes evidence arises in the context of other crimes that serve as the motive behind the crime charged.  Here is an example of how the exception works.  

The defendant stands trial for first-degree murder.  The deceased victim of this homicide was scheduled to testify against the defendant at his approaching trial on another pending murder charge.  The State may properly introduce its evidence that the defendant committed the earlier murder, in order to establish the motive for the murder for which he stands trial.  See 
Hale
, 326 Ill. App. 3d 455, 762 N.E.2d 59 (a number of car hijackings, and the murders that accompanied them, were all admissible to show that the charged murder and car hijacking were motivated by a desire to avoid capture, arrest, and prosecution for the earlier crimes).  

Here, none of the other earlier burglaries were a motive for the burglary of Harry Foss's barn.  Thus, the other burglaries were not legitimately introduced to provide the jury with a proper understanding of the motive behind that burglary.  

The common-scheme-and-design exception to the general ban on other-crimes evidence applies to that rare instance when two or more crimes are really a part of a grander criminal objective.  It is confined to those situations where several crimes are necessary in order to complete the overall design of the criminality and accomplish the true criminal objective.  Here is an example.  

The defendant once had a wealthy and aged father who took a young and expensive new bride.  At the defendant's trial for the murder of his father, the State could properly admit evidence that the defendant had murdered his stepmother as well, both murders being a part of a common scheme and design to protect, preserve, and hasten a full inheritance of the family fortune.    

People v. Jones
, 156 Ill. 2d 225, 620 N.E.2d 325 (1993), demonstrates how courts are apt to misapply this exception, treating it as authorizing other-crimes evidence when several crimes are committed in a common way or with a common method.  There, the Illinois Supreme Court confronted a case where the defendant stood trial for aggravated criminal sexual assault and murder.  
Jones
, 156 Ill. 2d at 234, 620 N.E.2d at 328.  The State introduced evidence that the defendant had sexually assaulted another woman three months after the charged sexual assault occurred.  
Jones
, 156 Ill. 2d at 235, 620 N.E.2d at 328.  The jury was instructed that the second sexual assault could be considered by it as evidence of a common scheme and design.  
Jones
, 156 Ill. 2d at 239, 620 N.E.2d at 330.  The Illinois Supreme Court ruled that the instruction had been given in error, finding, "Since the two rapes were not portions of one larger crime, but rather two separate and independent crimes, the trial court incorrectly instructed the jury that it could consider the [second] rape as evidence of design."  
Jones
, 156 Ill. 2d at 239, 620 N.E.2d at 330.

The State's evidence did not show that the burglary itself was driven by some scheme or design common and related to another crime.  The State was not trying to show that the defendant entered Harry Foss's barn and stole a power drill and shovel in order to dismember his slain girlfriend and bury her parts.  The burglary was a separate and distinct crime, without a larger scheme and design to necessitate its commission.  Thus, the other three burglaries were not legitimately admitted to show a common scheme and design to accomplish some overall larger criminal plan. 

The admission of other-crimes evidence to show an absence of mistake on a defendant's part arises when the defendant claims that his otherwise criminal acts were the result of a mistake.  For example, the defendant might have claimed that he entered Harry Foss's barn with the belief that he was on Uncle Earl's land and that Uncle Earl had given him permission to remove tools from his barn.  Had the defendant tendered such a claim, the other three burglaries would have become instantly relevant to dispel the notion that such a mistake had been made.   

Here, there was no claim of mistake.  Thus, the other three burglaries were not legitimately admitted to help prove an absence of that claim.

None of the reasons that the State tendered were legitimate reasons to admit the evidence of extraneous criminality.  None of the tendered reasons were pertinent to what was at issue.  Instructing the jurors that the other burglaries should only be considered to decide intent, motive, design, and absence of mistake implied that intent, motive, design, and absence of mistake were the important issues for determination, based upon the evidence heard.  Such instruction actually diminishes the consideration of the only question that was at issue–identity.  The limiting instruction implied that the question of who had entered Harry Foss's barn and taken his tools was a foregone conclusion.

We are asked to consider it harmless error to admit evidence of three other burglaries, because of the overwhelming evidence of the defendant's guilt.  We are not asked to consider the mistake harmless because a legitimate reason, other than those tendered, could validate the admission of the other-crimes evidence.  

The harm in admitting evidence of three burglaries other than the one for which the defendant stood trial, coupled with how the evidence was argued to the jury, is manifest.  We think it likely that the jury convicted the defendant because of a dislike for the kind of person who would roam rural Massac County and help himself to the various tools that residents housed in open barns and sheds.  We think the jurors convicted the defendant, in large part, because the evidence clearly demonstrated his propensity for burglary and theft.
(footnote: 2)  We are left to wonder how jurors were supposed to limit their consideration of the three other burglaries to matters of intent, motive, design, and lack of mistake, when none of those matters were at issue. 

We cannot end our examination of this case without a discussion of another exception to the general ban on other-crimes evidence that may well have allowed for the admission of the other-crimes evidence.  When, like here, the question of who committed a crime is the issue, evidence of other crimes can be admissible to show 
modus operandi
. 

"
Modus operandi
 *** refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer.  [Citation.] ***

***  While a showing of 
modus operandi
 does not require that the similarities be unique to the offenses being compared, there must be 'some distinctive features that are not common to most offenses of that type.' "  
People v. Barbour
, 106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667, 672 (1982) (quoting 
People v. Tate
, 87 Ill. 2d 134, 142-43, 429 N.E.2d 470, 475 (1981)).

Here is an example of how the 
modus operandi
 exception to the general ban of other-crimes evidence works. 

"Most gas station armed robberies involve the use of a pistol to relieve an attendant of all the money in the cash register.  Evidence of a series of gas station robberies committed by a masked man who, while armed with a pistol, forces attendants to empty their cash registers would not qualify for admission in order to show 
modus operandi
, even though every armed robbery was committed in identical fashion.  There would be no distinctive features to the methodology uncommon to most gas station holdups.  However, if this same armed robber repeatedly demanded all of the Fritos that the station had on hand, instead of its cash, the robberies would take on a distinctive feature to suggest that they were the work of the same individual.  Authorities would know that they were dealing with the Frito Bandito, and upon his arrest, the prosecution would be armed with all the robberies to prove his identity in the crime charged."  
People v. Wilson
, ___ Ill. App. 3d ___, ___, 798 N.E.2d 772, 783-84 (2003) (Kuehn, J., dissenting).

Here, the various burglaries share common and distinctive features that suggest the work of one person.  Someone targeted the easiest kind of building to steal from–remote unlocked rural barns and sheds that housed workshops.  The entries and thefts occurred during broad daylight.  The same kinds of tools were always pilfered.  And, most important of all, the tools all arrived at the J & D Jewelry and Loan on the same day of their disappearance, via transport in the defendant's pickup truck.  Certainly, an argument could be made that evidence about all the burglaries should be admitted to show the defendant's 
modus operandi
, the same distinctive method used to purloin the tools from Harry Foss's barn.  The other burglaries would help prove that the defendant was the person who entered the barn and took the tools.     

When the State's Attorney initially announced that he intended to introduce evidence of all the burglaries, he mentioned the 
modus operandi
 exception to the general prohibition against other-crimes evidence.  The trial judge did not rule at that time.  Weeks later, prior to the trial, the State's Attorney apparently abandoned that reason for the use of the evidence, tendering "intent, motive, design, and lack of mistake" as the reasons it should be admitted.  The trial judge weighed the probative value of the other-crimes evidence against its prejudicial potential, based upon that submission, and ruled that the three other burglaries would be allowed to show "intent, motive, design, and lack of mistake."

We suspect that the trial judge would have allowed the State to use evidence of the other three burglaries to show the defendant's 
modus operandi
, in order to enhance the State's proof of who burglarized Harry Foss's barn.  He would have probably determined that the probative effect of the other-crimes evidence outweighed the prejudice that accompanied its admission, had that reason been tendered instead of intent, motive, design, and absence of mistake.  However, we are not ready to declare that to be the case.

More important, since we presume that jurors take direction from limiting instructions and consider evidence only in a manner in which they are told to consider it, the instruction on the use of other-crimes evidence, if given, needs to be accurate.  When jurors are told to consider this kind of evidence for intent, motive, design, and lack of mistake and the evidence has no bearing on those matters, jurors have no way to use the evidence in an appropriate limited manner.  When evidence that harbors such a potential for misuse has been admitted and jurors have been told to consider it for the wrong reasons, we cannot presume that jurors used the evidence for a limited valid reason about which they were not informed.

Finally, the decision to admit this kind of evidence requires a balancing process.  That process requires more than mindless submission of every possible exception to the general ban of other-crimes evidence, with a hope and a prayer that one of the exceptions fits.  Whenever other-crimes evidence is admitted, ostensibly to show "intent, motive, design, and absence of mistake," and any one of those reasons, much less all of them, is inapplicable to the issues at hand, the balancing process by which the evidence was allowed to be heard is inherently flawed.  The trial judge has mistakenly viewed its use for an illegitimate reason and thereby misjudged the probative value of the evidence.  Under such a circumstance, the decision to admit the other crimes-evidence constitutes an abuse of discretion. 

For these reasons, we reverse and remand for a new trial.

Reversed; cause remanded.

HOPKINS, J., concurs.

JUSTICE WELCH, dissenting:

I respectfully dissent.  Although I agree with the majority's conclusion in footnote one that the defendant's ineffective-assistance-of-counsel claim fails, I do not agree with the majority's conclusion that the admission of other-crimes evidence in this case requires us to grant the defendant a new trial.  Assuming, 
arguendo
, that the admission of the other-crimes evidence was error, I do not believe that any prejudice that might have resulted to the defendant is sufficient to warrant a reversal and a new trial.  Even when one casts aside the purportedly tainted evidence, there is still overwhelming evidence of the defendant's guilt on the charges of burglary and theft.  As the majority itself points out, there was ample evidence properly before the jury that pertained to the burglary and theft for which the defendant stood trial.  Don Fairfield, the owner of the pawn shop to which the defendant sold the tools he had stolen from Harry Foss, testified that the defendant drove up to the pawn shop with a pickup load of tools on November 16, 1999, that Fairfield inspected the load and purchased a jigsaw, another drill, and a host of other hand tools, and that a bill of sale for the tools was executed.  Fairfield identified the November 16, 1999, document and testified that he had witnessed the defendant sign the document on that date.  The bill of sale was introduced into evidence.

Harry Foss testified that he lives in rural Metropolis and that on November 17, 1999, he reported to the Massac County sheriff that several drills, tools, and wrenches were missing from his barn.  Foss also testified that he found one of the stolen items at Fairfield's pawn shop.  Foss identified as his a Craftsman drill that Fairfield identified as one of the tools he had purchased from the defendant.  The evidence adduced from the testimony of Fairfield and Foss and directly related to the crimes with which the defendant was charged was without a doubt properly before the jury.

Johnson County deputy sheriff Jeff Jordan testified that the defendant, who knew that he was returning to Illinois to face burglary and theft charges, speculated out loud that the charges "must be about the barn that [he] went into."  Although it is not clear from the remark itself which barn it was to which the defendant was referring, it could well have been Harry Foss's barn, and thus Jordan's testimony was properly before the jury as well.  Accordingly, the jury had before it evidence that the jury could have found directly linked the defendant to the scene of the crime, as well as evidence directly implicating him in the sale of the goods stolen from that scene.

In the past, we have held error to be harmless where the evidence supporting a defendant's conviction is so overwhelming that the defendant would have been convicted even if the error was eliminated.  See 
People v. Tucker
, 317 Ill. App. 3d 233, 243 (2000).  The majority claims the error in this case is not harmless because the majority believes the allegedly improper evidence led the jury to convict the defendant on the basis of the defendant's "propensity for burglary and theft" rather than, presumably, the one burglary and theft the State easily would have proven even had the other-crimes evidence been excluded.  I find this reasoning highly speculative and simply do not believe the outcome of this case would have been any different had the other-crimes evidence been excluded.  Because I believe the evidence properly before the jury in this case is overwhelming, I would hold any error in the admission of other-crimes evidence harmless and would affirm the defendant's conviction and sentence.

                                      NO. 5-02-0238

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Massac County.

)

)  No. 99-CF-121

)

HURSHEL E. LENLEY, )  Honorable

)  Terry J. Foster,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: December 23, 2003

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Terrence J. Hopkins, J.,

Concurs

Honorable Thomas M. Welch, J.,

Dissents

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, John H. Gleason, Assistant Defender, Office

for
 of the State Appellate Defender, Fifth Judicial District, 730 E. Illinois Highway 15,

Appellant
 P.O. Box 2430, Mt. Vernon, IL 62864-0047

___________________________________________________________________________________

Attorneys
 Hon. Joe Jackson, State's Attorney, Massac County Courthouse, P.O. Box 152, 

for
 Metropolis, IL 62960; Norbert J. Goetten, Director, Stephen E. Norris, Deputy

Appellee
 Director, T. David Purcell, Staff Attorney, Office of the State's Attorneys Appellate

Prosecutor, 730 E. Illinois Highway 15, P.O. Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________________

FOOTNOTES
1:
The defendant raises an ineffective-assistance-of-counsel claim over his lawyer's failure to object when Chief Deputy Holder commented upon the assertion of the right to remain silent.  Even if an appropriate challenge had been made to this testimony, the trial's outcome would not have changed.  A different outcome is simply not a reasonable possibility, in light of the remaining evidence against the defendant. 

2:
Our dissenting colleague believes that the State's case, absent the other-crimes evidence, was overwhelming.  However, if the evidence had been confined to one sale of stolen tools between the defendant and Don Fairfield, the State's case would have been dramatically weakened.  A juror's conclusion that the defendant committed burglary would rest entirely upon the inference drawn from the sale of the stolen tools.  The defendant's written statement could not have been introduced into evidence without supplying the defendant with an explanation for the one-time possession of stolen tools.  That explanation would have been far more compelling without evidence of three separate sales to the pawn shop, all involving tools recently stolen from different rural workshops.  The statement's contents, if introduced, would even explain the defendant's flight when he heard that Foss and the sheriff had visited the pawn shop.  Having claimed to have paid only $100 for all of Foss's tools, the defendant could have argued that his flight evidenced guilt, but not guilt for having committed burglary.  The defendant could have claimed that he ran to Alabama because he knowingly possessed and sold stolen merchandise.  He could have claimed that he knew he had committed a crime but that he had not committed the crime of burglary.  Contrary to the dissent, we cannot conclude that the jury would have readily dispatched a guilty verdict in the absence of the error.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 12/23/03.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.