NO. 4-03-0883

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

JASON A. SPYRES,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Macon County

No. 02CF550

Honorable

Theodore E. Paine,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In June 2003, a jury convicted defendant, Jason A. Spyres, of cannabis trafficking (720 ILCS 550/5.1(b) (West 2002)) (more than 5,000 grams of a substance containing cannabis (720 ILCS 550/5(g) (West 2002))).  The trial court later sentenced him to 20 years in prison. 

Defendant appeals, arguing that the trial court (1) abused its discretion by admitting certain other-crimes evidence and (2) gave an improper limiting instruction to the jury.  We disagree and affirm.

I. BACKGROUND

In May 2002, the State charged defendant with (1) cannabis trafficking (720 ILCS 550/5.1(b) (West 2002)) (count I), (2) possession of cannabis with intent to deliver (720 ILCS 550/5(g) (West 2002)) (count II), (3) possession of cannabis (720 ILCS 550/4(g) (West 2002)) (count III), and (4) unlawful use of weapons (UUW) (possession of a pipe bomb) (720 ILCS 5/24-1(a)(7)(iii) (West 2002)) (count IV).

A. The Evidence of Defendant's Participation in 

the Alleged Crimes

At defendant's June 2003 trial, the evidence showed that on June 20, 2001, a Staples office supply store employee in Red Bluff, California, alerted her supervisor to a suspicious package that had been dropped off at the store for delivery to Illinois by the United Parcel Service (UPS).  The package was addressed to Mike Gonzalez at defendant's residence, 3980 East Hickory Street in Decatur, Illinois.  The bad condition of the package and the behavior of the woman dropping it off (she appeared nervous and was reluctant to provide necessary information) aroused the employee's suspicion.  After the woman left the store, the employee opened the package and discovered that it contained a large ball wrapped in electrical tape.  The Staples store supervisor turned the package over to local law-enforcement authorities, who arranged to have it shipped to the Decatur police department.  

Decatur police obtained a search warrant and discovered that the package from Red Bluff contained 38 separate one-pound bags of cannabis.  Officers then repackaged some of the cannabis along with a transmitting device, and on June 22, 2001, an undercover officer (dressed as a UPS delivery man) delivered the package to defendant's residence, where defendant's 14-year-old stepbrother, Timothy Parish, signed for it.  

Four hours later, defendant arrived at his residence while police were searching it, pursuant to a search warrant, and he was arrested.  An officer searched defendant and found $700 in cash and a piece of paper bearing the UPS tracking number of the package from Red Bluff.  Officers found the package from Red Bluff in the residence, although there was conflicting evidence as to whether it was discovered in defendant's bedroom or that of his roommate, Justin Pelaiz.  The officers also found in defendant's car a receipt for a UPS package that defendant had shipped that day.  Decatur UPS employees later turned that package over to police.  It was addressed to defendant's mother, Linda Spyres, in Red Bluff and contained $2,250 in cash.

Defendant testified that the package delivered to his residence on June 22, 2001, was intended not for him but for Pelaiz, who was a drug trafficker.  Defendant stated that the cash he shipped to Red Bluff on June 22, 2001, belonged to Pelaiz and was intended for Pelaiz's stepfather.  He sent the cash to Linda's address because he was unsure of Pelaiz's stepfather's address.  Defendant acknowledged that in July 2000, he arranged for one UPS package containing his belongings to be shipped from Red Bluff to Decatur.  He denied arranging any other UPS shipments from Red Bluff to Decatur between June 2000 and June 2001.

B. The Other-Crimes Evidence

Over defendant's objection, the State also presented "other-crimes evidence" in the form of exhibits and testimony from (1) employees of the Red Bluff Staples store, (2) law- enforcement officers from both California and Illinois, and (3) individuals in Illinois who could connect defendant to various addresses in Decatur.  

The Staples employees identified store documents indicating that defendant, Linda, and a third individual, Edith Potter, had shipped packages from Red Bluff to Decatur on at least 10 separate occasions in the year prior to defendant’s June 22, 2001, arrest.  One employee identified defendant in court, another employee identified Linda from a photograph, and three separate employees identified Potter from a photograph.  

Phillip Johnston, a detective from the Red Bluff area, testified that in late June 2001, he executed a search warrant on a house at 22425 Sunbright Avenue in Red Bluff, which was defendant's residence before he moved to Decatur.  Linda answered the door at the residence, and the search turned up 29.5 grams of cannabis, packing materials, and a digital scale.  

In July 2001, Johnston conducted a search at 838 Orange Street, where Potter answered the door.  During that search, Johnston found (1) over 200 grams of processed cannabis; (2) packing materials; (3) digital scales; (4) Staples and United States Postal Service receipts linking Potter to defendant; (5) a ledger documenting transactions and bearing defendant’s name, address, and telephone number; and (6) a folder bearing defendant's initials and containing shipping order forms.

Illinois State Police officer Mike Conners testified that in May 2001, he pulled defendant over for a traffic stop in Woodford County.  During the stop, Conners searched defendant's car and discovered (1) one-half pound of cannabis; (2) $278 in cash; (3) hand scales; and (4) an envelope of photographs, some of which showed defendant posing at his East Hickory Street residence with weapons and large quantities of cannabis.

Randy Coonce testified that during the fall of 2000, he sold the residence at 3980 East Hickory to defendant on contract.  James Black, a Decatur rental-property manager, testified that during 2000, defendant rented a residence located at 1395 East Grand Street in Decatur.  (Documents from the Red Bluff Staples store showed that Potter had sent packages from Staples to 1395 East Grand Street during 2000.) 

Based on the evidence presented, the jury found defendant guilty of counts I through III and acquitted him of count IV (UUW) (possession of a pipe bomb).  The trial court entered judgment only on count I (cannabis trafficking) and later sentenced defendant as stated.  This appeal followed. 

II. ANALYSIS

A. The Trial Court’s Admission of Other-Crimes Evidence

1. 
Admissibility
 
of
 
Other-Crimes
 
Evidence

 
and
 
the
 
Standard
 
of
 
Review

Initially, we note that both the State and the trial court used the phrase "system of operation" instead of "common design."  Because "common design" is the more accurate phrase, we will use it throughout this opinion.

The term "other-crimes evidence" encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial.  See 
People v. Illgen
, 145 Ill. 2d 353, 365, 583 N.E.2d 515, 520 (1991); 
People v. Colin
, 344 Ill. App. 3d 119, 126 n.2, 799 N.E.2d 451, 458 n.2 (2003); 
People v. Bobo
, 278 Ill. App. 3d 130, 132, 662 N.E.2d 623, 625 (1996).  Generally, other-crimes evidence is inadmissible if it is relevant only to demonstrate a defendant's propensity to engage in criminal activity.  
People v. Richee
, 355 Ill. App. 3d 43, 50-51, 823 N.E.2d 142, 149 (2005).  
Such evidence may be admissible, however, when it is relevant to show motive, intent, identity, absence of mistake or accident, 
modus operandi
, or the existence of a common plan or design.  
People v. Wilson
, 214 Ill. 2d 127, 135-36, 824 N.E.2d 191, 196 (2005); 
People v. Hansen
, 313 Ill. App. 3d 491, 500, 729 N.E.2d
 934, 942 (2000).  Indeed, other-crimes evidence is admissible to prove any material fact other than propensity that is relevant to the case.  
People v. Donoho
, 204 Ill. 2d 159, 170, 788 N.E.2d 707, 714 (2003).  However, even when relevant for a permissible purpose, the trial court may exclude other-crimes evidence "if its prejudicial effect substantially outweighs its probative value."  
Illgen
, 145 Ill. 2d at 365, 583 N.E.2d at 519.

Evidence of a common design proves the existence of a larger criminal scheme of which the crime charged is only one element.  
People v. Jones
, 156 Ill. 2d 225, 239, 620 N.E.2d 325, 330 (1993).  "'The several crimes must have some degree of identity between the facts of the crime charged and those of the other offense in which the defendant was involved.'"  
Jones
, 156 Ill. 2d at 239, 620 N.E.2d at 330, quoting 
People v. Rose
, 198 Ill. App. 3d 1, 7, 555 N.E.2d 414, 418 (1990).  However, we agree with Justice Hoffman's scholarly analysis in 
Hansen
, in which he wrote:  (1) "the existence of factual similarities between multiple crimes does not, in itself, establish that the crimes were committed as part of a common design, scheme, or plan" (
Hansen
, 313 Ill. App. 3d at 503, 729 N.E.2d at 944); and (2) 
"[i]n determining whether multiple crimes have been committed as part of a common design, scheme, or plan, [it is] far more sensible to focus on the defendant's state of mind or purpose in committing the offenses than on the factual similarities of the offenses" (
Hansen
, 313 Ill. App. 3d at 505, 729 N.E.2d at 945).

Further, we agree with the appellate court's observation in 
Rose
 that "[t]he 
modus
 
operandi
 exception is often confused with the exception of common design."  
Rose
, 198 Ill. App. 3d at 6-7, 555 N.E.2d at 418.  Trial courts should be alert to arguments by the State for the admission of other-crimes evidence that shows such confusion.

The admissibility of other-crimes evidence is left to the trial court's sound discretion, and we will not disturb that decision absent a clear abuse of discretion.  
Wilson
, 214 Ill. 2d at 136, 824 N.E.2d at 197.  An abuse of discretion occurs when the decision made by the trial court was "'"arbitrary, fanciful[,] or unreasonable"'" or no reasonable person would reach the same conclusion.  
Illgen
, 145 Ill. 2d at 364, 583 N.E.2d at 519, quoting 
People v. M.D.
, 101 Ill. 2d 73, 90, 461 N.E.2d 367, 375 (1984) (Simon, J., dissenting), quoting 
Peek v. United States
, 321 F.2d 934, 942 (9th
 Cir. 1963).  

2. 
Defendant's
 
Claim
 
That
 
the
 
Trial
 
Court
 
Erred
 
by
 

Admitting
 
the
 
Other-Crimes
 
Evidence

 

Defendant argues that the trial court erred by admitting the other-crimes evidence.  The State responds that the other-crimes evidence was admissible under the common-design, intent, and knowledge exceptions.  Because we agree that the court properly admitted the other-crimes evidence under the common-design exception, we need not address whether the evidence was admissible under the intent and knowledge exceptions.  As the supreme court explained in 
Jones
, after holding that one of the bases argued by the State for the admissibility of other-crimes evidence was erroneous,

"[T]his does not necessarily compel reversal. Other-crimes evidence that is admissible for one reason is not affected by inadmissibility for another reason. [Citation.]  When jurors receive a limiting instruction that permits them to consider evidence for a number of reasons, and one of those reasons is determined on appeal to be improper, judgment of conviction must be affirmed despite the overly broad instruction."  
Jones
, 156 Ill. 2d at 240, 620 N.E.2d at 330.

In this case, the evidence documenting the flow of cannabis from locations in Red Bluff that were connected to defendant or his associates to addresses in Decatur where defendant lived or to which he had access was relevant to prove an ongoing effort on his part to bring cannabis into Illinois for distribution.  The details of the previous shipments were relevant to whether defendant was engaged in the crime charged.  In particular, those other shipments demonstrated how defendant went about the business of cannabis trafficking.  In addition, the evidence that during a May 2001 traffic stop, defendant was found with one-half pound of cannabis, hand scales, and a large amount of cash supported the State's theory that in June 2001, defendant was engaged in cannabis trafficking, the charged offense.  Accordingly, we conclude that the trial court properly determined that the other-crimes evidence was relevant to defendant’s participation in a common design.  See 
People v. Bedoya
, 325 Ill. App. 3d 926, 937, 758 N.E.2d 366, 377 (2001) ("Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence in the case more probable or less probable than it would be without the evidence").

Defendant nonetheless contends that even if the other-crimes evidence was relevant to show common design, the trial court abused its discretion by determining that the probative value of the other-crimes evidence outweighed its prejudicial impact.  We disagree. 

Whether the probative value of other-crimes evidence is outweighed by its prejudicial impact is a determination left to the trial court's discretion, and we will not disturb that decision absent a clear abuse of discretion.  
Wilson
, 214 Ill. 2d at 136, 824 N.E.2d at 197; 
Bedoya
, 325 Ill. App. 3d at 938, 758 N.E.2d at 377.

In this case, defendant was charged with cannabis trafficking for receiving a 38-pound shipment of the drug from California and mailing cash in return.  Defendant claimed that he was merely the roommate of a drug trafficker.  The State produced 
evidence linking defendant to a series of similar shipments over the previous year, as well as his possession of items linked to cannabis trafficking.  Thus, although defendant is correct that the other-crimes evidence had a prejudicial impact--and perhaps even a significant one--we agree with the trial court that the evidence's probative value outweighed this prejudicial impact, and in our judgment, by a wide margin.

The trial court was in the best position to weigh the prejudicial impact of this evidence versus its probative value in proving that defendant was fully engaged in cannabis trafficking and was not merely an innocent bystander.  Reviewing the court’s decision under the appropriate standard, we conclude that the court did not abuse it discretion. 

B. The Jury Instruction

Although not set forth as a separate argument, defendant also argues that the trial court gave the jury an improper limiting instruction regarding the other-crimes evidence.  Relying on 
People v. Lenley
, 345 Ill. App. 3d 399, 411-12, 802 N.E.2d 315, 325-26 (2003), defendant contends that, even if the court properly admitted the other-crimes evidence under the common-design exception, the inclusion of the intent and knowledge exceptions in the instruction left the jury with no valid guidelines under which to consider the evidence.  We disagree.  

In 
Lenley
, during the defendant's burglary trial, the trial court listed four other-crimes exceptions, under which the jury could consider evidence of the defendant's participation in other burglaries.  On appeal, the Fifth District reversed the defendant's burglary conviction, upon concluding that the other-crimes evidence was not admissible under any of the four exceptions.  
Lenley
, 345 Ill. App. 3d at 412, 802 N.E.2d at 326.  Unlike in 
Lenley
, the other-crimes evidence in this case was properly admitted under the common-design exception.  As earlier noted, our supreme court has held that "[w]hen jurors receive a limiting instruction that permits them to consider evidence for a number of reasons, and one of those reasons is determined on appeal to be improper, judgment of conviction must be affirmed despite the overly broad instruction."  
Jones
, 156 Ill. 2d at 240, 620 N.E.2d at 330.  Thus, even assuming 
that the other-crimes evidence was not admissible under the intent and knowledge exceptions, the inclusion in the instruction of a proper exception (common design) requires us to affirm defendant’s conviction.  

Finally, as we have done in the past (see 
People v. Hensley
, 354 Ill. App. 3d 224, 234, 819 N.E.2d 1274, 1283 (2004); 
People v. Denny
, 241 Ill. App. 3d 345, 360-61, 608 N.E.2d 1313, 1324 (1993)), we urge trial courts--as was done in this case--to instruct juries in accordance with Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4
th ed. 2000) (hereinafter IPI Criminal), both verbally from the bench before the jury first hears the other-crimes evidence and at the close of the case.  See also 
People v. Heard
, 187 Ill. 2d 36, 60-61, 718 N.E.2d 58, 72 (1999) (citing 
Denny
 and noting that "[t]he better practice may be for trial courts to instruct the jury [with IPI Criminal 4th No. 3.14], not only at the close of the case, but also at the time other-crimes evidence is admitted, of the limited purpose for which it may consider the other-crimes evidence").

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. 

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.