# Illinois Official Reports

## Appellate Court

---

### *People v. Clark*, 2015 IL App (1st) 131678

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IAN CLARK, Defendant-Appellant. |
| | |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-1678 |
| | |
| Filed | June 25, 2015 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-C-220330; the Hon. Garritt E. Howard, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Samuel M. Hayman, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Whitney Bond, Assistant State's Attorneys, and Marques Berrington, law student, of counsel), for the People. |
| | |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant Ian Clark was convicted of theft for stealing a bicycle. At his jury trial, the trial court permitted the State to introduce evidence that, four years before this case, defendant had stolen another bicycle in the same area. According to the State, the evidence of this other crime was relevant to prove defendant's intent and identity in the instant case.

¶ 2        On appeal, defendant contends that the trial court erred in admitting evidence of his prior bicycle theft because it was not relevant to prove either his intent or identity. Instead, defendant argues that the only relevant purpose for that evidence was to prove his propensity to steal bicycles, which is a prohibited purpose for other-crimes evidence. Defendant also contends that the trial court erred by omitting a necessary paragraph from the jury instruction dealing with his prior theft, which would have instructed the jury that it was up to them to weigh the evidence relating to defendant's prior theft.

¶ 3        We agree with defendant that the trial court erred in admitting the other-crime evidence. Evidence of defendant's prior theft did not prove his intent to commit theft or his identity in the instant case in a permissible way. Rather, it relied on an inference that defendant possessed a propensity to commit theft, which is prohibited under the rules of evidence. However, we also conclude that, in light of the overwhelming evidence against defendant, that error was harmless beyond a reasonable doubt.

¶ 4        We also agree that the trial court erred in delivering an incomplete version of Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 3.14). However, we conclude that this error did not rise to the level of plain error, creating a serious risk that the jury misapplied the applicable law, considering that the jury was told that it "may" consider the evidence of defendant's prior conviction, rather than being told that it was required to consider it, and where other jury instructions told the jury that it could give whatever weight it deemed appropriate to the testimony and evidence in this case. We affirm defendant's conviction.

¶ 5                                    I. BACKGROUND

¶ 6        The State charged defendant with one count of theft, alleging that defendant stole a bicycle in Park Ridge, Illinois, in 2012. Prior to trial, the State filed a motion seeking permission to admit evidence that defendant had stolen a bicycle in 2008. The State argued that this crime proved defendant's intent and identity in this case. Defendant opposed the motion, arguing that the evidence was irrelevant for any purpose other than showing defendant's propensity to steal bicycles.

¶ 7        The trial court, indicating that it was "very familiar with this area of law," noted that evidence of other crimes is inadmissible if used to establish a defendant's propensity to commit crimes, but it is admissible for any other purpose "such as *modus operandi*, intent, absence of mistake, et cetera." Without specifying the basis for which the evidence would be used, the trial court then stated that the probative value of the other-crime evidence outweighed its prejudicial effect, noting that the 2008 theft was "not too remote in time." The court granted the State's motion to admit the evidence of the 2008 theft.

¶ 8        At trial, Adam Woznicki testified that he was waiting in his car in the parking lot of ATI Physical Therapy (ATI) in Park Ridge, Illinois, around 9 a.m. on May 6, 2012. Woznicki

testified that he saw defendant, whom he identified in court, walk past his car. Defendant was about 20 to 30 feet away from Woznicki. Woznicki said that defendant had something in his hand, but he could not see what it was. Woznicki testified that defendant rode away on a bicycle that had been locked to a pole in front of Woznicki's car. Defendant rode the bicycle past Woznicki's car and into an alley. Woznicki said that defendant seemed to be in a rush. After defendant had left, Woznicki saw that the bicycle's lock "was hanging on the pole," so Woznicki assumed that defendant had cut the lock.

¶ 9    After losing sight of defendant, Woznicki drove around the block to try to find him. Woznicki turned out of the ATI parking lot and up a side street, where he saw defendant "trying to put the bike in a car." According to Woznicki, defendant was trying to remove the front tire of the bicycle so that it would fit in a black car.

¶ 10    Woznicki circled the block and saw defendant again. Defendant, who was driving the black car, passed Woznicki. Woznicki typed the license plate number of the black car into his cell phone, then drove back to ATI. Woznicki testified that defendant's hair color stood out to him as unique. Woznicki said that defendant's hair was "gray and black, like two-tone."

¶ 11    Robert Greif was the owner of the stolen bicycle. He testified that he went to ATI for physical therapy "sometime around" 9 a.m. or 9:30 a.m. on May 16, 2012. Greif locked his bicycle to a light post outside the building. After approximately an hour and a half of physical therapy, someone entered the building and said that a bicycle that had been locked outside was stolen. Greif called the police.

¶ 12    Woznicki told the police about defendant's hair color and described him as 6 feet tall and approximately 40 years old. Defendant also gave the police the license plate number of the black car.

¶ 13    Detective Tony Raitano of the Park Ridge police department entered the license plate number into a Secretary of State database, which returned information on a black Infiniti registered to defendant. Raitano created a photo array that included defendant's picture along with five individuals that resembled defendant.

¶ 14    On May 22, 2012, Woznicki went to the Park Ridge police department, where he viewed the photo array. Woznicki signed an advisory form instructing him that the suspect may or may not be in the array and that he was not required to make an identification. Woznicki looked at the array briefly and identified defendant as the person who took the bicycle.

¶ 15    On June 27, 2012, defendant was taken into custody during an unrelated traffic stop. Defendant was driving a 2002 black Infiniti sedan. The police did not recover the bicycle, a lock, or any bolt cutters. Defendant was wearing glasses when he was arrested.

¶ 16    Two witnesses testified regarding the 2008 theft. Before they testified, the court instructed the jury that the evidence would "be received on the issue[s] of the defendant's identification and intent and may be considered *** only for [those] limited purpose[s]."

¶ 17    Francis Zurek, who was 17 years old at the time of trial, testified that his bicycle was stolen on June 19, 2008, when he was 12 years old. Zurek parked his bicycle outside the Park Ridge public library, locked it to a bicycle rack, and went across the street to a restaurant. After eating, Zurek returned to the library and saw defendant riding his bicycle. Zurek said, "Sir, that's my bike," but defendant continued to ride away. Zurek saw a police car and flagged it down.

¶ 18    Officer Robert Evans testified that Zurek flagged him down and told him that he saw someone steal his bicycle. Evans radioed the information Zurek gave him to other officers. Evans soon received a call that a suspect had been apprehended nearby. Evans went to that officer's location and saw defendant sitting on the curb in handcuffs. Evans also noticed a bicycle, a pair of bolt cutters, and a severed cable that was still attached to the bicycle.

¶ 19    Evans brought defendant back to Zurek, and Zurek identified defendant as the man who had stolen his bicycle. Evans testified that he brought defendant back to the Park Ridge police station, where defendant admitted that "he cut the cable and took the bike."

¶ 20    The parties stipulated that defendant pled guilty to the theft of Zurek's bicycle on April 15, 2009. Defendant exercised his right not to present any evidence.

¶ 21    During its closing argument, the State thoroughly discussed the 2008 theft. The State said, "The law allows you to consider that evidence [of the 2008 theft] because you are not required to consider the evidence that you've heard in a vacuum, in a sterile environment." The State highlighted the similarities between the 2008 and 2012 thefts, noting that "[i]t was the same item that was taken" and that defendant "cut the locks" on the bicycles in both cases. According to the State, these similarities "establish the defendant's clear intent in permanently depriving the victims of the bicycle[s]." The State also argued that the similarities between the thefts "can be considered to establish the defendant's intent and the defendant's identification."

¶ 22    At the jury instructions conference, defendant renewed his objection "to the other crimes evidence." The State proposed IPI Criminal 4th No. 3.14, which related to its other-crime evidence. When the court asked defense counsel if she objected to IPI Criminal 4th No. 3.14, she responded, "We would reiterate our prior objections to the whole issue of the other crimes evidence coming in." Defense counsel clarified that she was "[p]reserving that issue." The court then granted the State's request to deliver IPI Criminal 4th No. 3.14. When instructing the jury regarding the other-crime evidence, the court stated, "Evidence has been received that the defendant has been involved in an offense other than that charged in the information. This evidence has been received on the issue of the defendant's identification and intent and may be considered by you only for that limited purpose."

¶ 23    The jury found defendant guilty of theft. The trial court sentenced defendant to four years' incarceration. Defendant appeals.

¶ 24                                    II. ANALYSIS

¶ 25    Defendant raises two issues relating to the other-crime evidence the State presented. First, he argues that the other-crime evidence was inadmissible because it served no relevant purpose other than to prove his propensity to commit theft. Second, he argues that the trial court delivered an incorrect version of IPI Criminal 4th No. 3.14, which omitted a necessary paragraph telling the jury that it was entitled to weigh the evidence of the 2008 theft. We address each contention in turn.

¶ 26                          A. Admissibility of Other-Crimes Evidence

¶ 27    Generally, evidence that the defendant in a criminal case has engaged in other bad acts on a different occasion is not admissible to show that the defendant has a propensity to commit crime. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); *People v. Pikes*, 2013 IL 115171, ¶ 13. The law

disallows evidence of prior bad acts on this basis, not because it has no probative value, "but rather because it has too much." *People v. Manning*, 182 Ill. 2d 193, 213 (1998); see also *People v. Dabbs*, 239 Ill. 2d 277, 284 (2010) (concern over evidence of prior bad acts is that it "proves too much"); *People v. Lenley*, 345 Ill. App. 3d 399, 400 (2003) (rule against propensity evidence "bans rather persuasive evidence of someone's guilt from the State's arsenal of proof"). Indeed, in a situation like this one, where the prior bad act involved the theft of a bicycle, the same offense for which defendant was standing trial, the law recognizes that it is a natural human reaction to think that, if defendant committed a previous bike theft, it is more likely that he committed *this* bike theft. It is precisely because that inference is so enticing that the law disallows it, because it can overshadow the jury's consideration of other evidence. *Manning*, 182 Ill. 2d at 214 ("The law distrusts the inference that because a person has committed other crimes, he or she is more likely to have committed the current crime.").

¶ 28   Nevertheless, evidence of prior bad acts may be admitted to prove any matter other than propensity that is relevant to the case, including "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); *Pikes*, 2013 IL 115171, ¶ 14. If the trial court is satisfied that this evidence is relevant to a material question unrelated to propensity, and the court then determines that the probative quality of the evidence outweighs any prejudice to the defendant, the evidence may be admitted. *Manning*, 182 Ill. 2d at 214. The admissibility of other-crime evidence rests within the trial court's discretion and will not be overturned absent an abuse of that discretion. *People v. Wilson*, 214 Ill. 2d 127, 136 (2005); *Dabbs*, 239 Ill. 2d at 284.

¶ 29   In this case, the trial court allowed the State to use the evidence of the 2008 theft for two purposes other than propensity: intent and identity. We will address each of these purposes.

¶ 30                                         1. *Intent*

¶ 31   Defendant contends that his prior theft was irrelevant to the issue of intent because the thief's intent during the 2012 robbery was undisputed. Defendant notes that he did not present any evidence that he mistakenly took the bicycle and that the evidence unequivocally showed that the thief intentionally cut the lock and took the bicycle. The State argues that it was not precluded from producing evidence of intent simply because defendant did not challenge the State's evidence of intent, as the State must prove intent regardless of the defense theory.

¶ 32   This court has held that other-crime evidence may not be admitted to prove intent where the defendant's intent is not contested at trial. In *Lenley*, 345 Ill. App. 3d at 401-03, the State introduced evidence that the defendant, who was on trial for burglarizing a barn, had previously broken into other barns in the same town. At trial, the defendant's theory was that he was not the person who burglarized the barn. *Id.* at 406. The court held that none of those other burglaries were relevant to the defendant's intent because "the intent with which someone entered [the] barn simply was not at issue." *Id.* at 407. Because the defendant never claimed he entered the barn without the intent to commit a theft–he said he did not commit the crime at all–the jury "was not being asked to wrestle with the intent *** with which the defendant entered [the] barn." *Id.* Thus, the other burglaries did not help the State prove the burglar's intent. *Id.*

¶ 33   Similarly, in *People v. Knight*, 309 Ill. App. 3d 224, 225 (1999), the State introduced evidence that the defendant, who was on trial for domestic battery, had previously threatened to kill his girlfriend if she " 'ever slept with one of his friends again.' " The court held that this

evidence was not admissible to prove the defendant's intent because the defendant's intent was not at issue. *Id.* at 227. The court noted that "the defendant did not argue that he injured [his girlfriend] by mistake or that he lacked the requisite intent to commit the crime; rather, he testified that he was not present when [his girlfriend] was beaten." *Id.*

¶ 34    Both *Lenley* and *Knight* are similar to this case. Like *Lenley* and *Knight*, defendant's intent in this case was not at issue. The evidence undoubtedly showed that the individual who took Greif's bicycle cut its lock, rode it away, removed its wheel, put it in a car, and drove away. The only conclusion to be drawn from this evidence was that the perpetrator intended to steal Greif's bicycle. At trial, defendant did not claim that he lacked the intent to steal the bicycle; his theory was that he did not steal the bicycle at all. Adding evidence of the 2008 theft did not further the State's case regarding defendant's intent.

¶ 35    The State cites *People v. Heard*, 187 Ill. 2d 36 (1999), for the proposition that the State can introduce other-crime evidence relevant to intent even where the defendant does not contest the element of intent at trial. In that case, the defendant was convicted of murdering three people: his ex-girlfriend, Natalie; Natalie's cousin; and Natalie's new boyfriend, Kenneth. *Id.* The State introduced evidence of three previous instances in which the defendant displayed his jealous behavior, postbreakup, including stealing Natalie's clothes and attacking her when he returned them; ramming his truck into her car; and ramming his truck into Kenneth's car, in which Natalie was a passenger, and then firing bullets at the car. *Id.* at 57-58. The defendant argued that intent at the murder trial was not at issue, because he denied being the perpetrator of the murders–and whoever did shoot the three victims obviously intended to kill them. *Id.* at 60.

¶ 36    The supreme court found the evidence properly admitted, stating in part as follows:
> "[T]he other-crimes evidence was admissible to prove defendant's motive and intent to commit the murders. The other-crimes evidence revealed defendant's continuing hostility and animosity toward Natalie and Kenneth. The clothes-stealing incident served as evidence that defendant's motive for the murders was his anger over the break-up of his relationship with Natalie. It also showed defendant's intent to harm Natalie. Likewise, all three crimes served as evidence of defendant's intent to harm both Natalie and Kenneth." *Id.* at 59.

¶ 37    The supreme court agreed with the defendant that it was obvious that whoever shot the three victims intended to kill them, but the court emphasized that the State still "had to prove that defendant was the shooter," and that the State introduced this other-crime evidence to prove defendant's "motive and intent to kill the victims, thus providing further proof of defendant's identity as the shooter." *Id.* at 60.

¶ 38    We read *Heard* differently than the State. *Heard* found the other-crimes evidence relevant as tangible evidence of the defendant's jealousy and hurt over the breakup, which provided him with a clear motive to kill the victims. It is true that the supreme court discussed the defendant's "intent" in its discussion, but we do not read that language as referring to the question of "intent" in the strict legal sense of whether the perpetrator, in firing the weapon, did or did not "intend" to cause death or great bodily harm; we think it is clear that the court was referring more generally to his jealousy, his overall state of mind–his motive to do harm to his ex-girlfriend and her new boyfriend.

¶ 39    And we certainly do not read that language as authority for the proposition that the State posits, namely, that in *any* case requiring proof of intent, intent is *automatically* deemed to be

at issue for the purposes of admitting other-crime evidence. The court never remotely suggested such a sweeping finding. If there were any doubt about our interpretation, one need only consider a case decided six years later by our supreme court in which it highlighted the fact that the question of whether a defendant's intent is automatically at issue in any criminal case remained open.

¶ 40    In *Wilson*, 214 Ill. 2d at 137, the Illinois Supreme Court reviewed the case law from across the country on this issue, noting that, "[i]n cases involving specific-intent crimes, some courts hold that intent is automatically at issue for purposes of deciding whether to admit other-crimes evidence, regardless of whether the defendant has made intent an issue in the case," while noting that "[o]ther courts have taken the opposite approach." *Id.* Ultimately, the court did not take a position on this split of authority, because it found that, in the case before it, defendant had placed his intent at issue by arguing that he did not intend to touch the victim in a sexual way. *Id.* at 137-38. *Wilson* does not support the notion that defendant's intent was automatically at issue in this case.

¶ 41    Absent direction from our supreme court, we are unwilling to adopt a bright-line rule that intent is automatically at issue in any case where specific intent is an element of the crime. The facts of this case are a perfect example of why. The crime with which defendant was charged was a specific-intent crime. See 720 ILCS 5/16-1(a)(1) (West 2012); *People v. Washington*, 375 Ill. App. 3d 243, 257 (2007); *People v. Dressler*, 317 Ill. App. 3d 379, 387-88 (2000). But nobody could plausibly claim that intent was a contested issue at trial. Whoever stole the bike in this case cut the lock, rode it away, removed the front wheel, shoved it into the trunk of a car, and drove that car away. Of course that person intended to steal the bike. Defendant was not arguing that his theft was merely negligent or reckless, or that he intended to return it–he said he was not the thief at all.

¶ 42    Moreover, even if we did adopt a bright-line rule that intent is automatically at issue in this specific-intent crime, we would still fail to see how the 2008 crime was relevant to defendant's intent in stealing the bike in question in 2012. The 2008 theft was unrelated to the 2012 theft. The fact that he stole someone else's bike four years earlier does not move the needle one inch toward the conclusion that his theft in 2012 was intentional, as opposed to accidental or a misunderstanding. The only way it would be relevant–the only way to connect defendant's intent in the 2008 theft to his intent in the 2012 theft–is through a propensity inference: because defendant intended to steal a bike in 2008, it is more likely he intended to steal this one in 2012. That is the very inference the State is not allowed to present.

¶ 43    Though not binding on this court, we note the decision in *State v. Sullivan*, 679 N.W.2d 19, 29 (Iowa 2004), where the Iowa Supreme Court held that, in a trial for possession of narcotics with intent to deliver, the State could not introduce evidence that the defendant had previously been convicted of dealing drugs because "[t]he State's inherent argument for admitting the evidence was based on the character theory that if [the defendant] entertained the intent to deliver during a similar prior incident, he probably harbored the same intent at the time of the charged offense." As in *Sullivan*, the State here attempted to introduce evidence that defendant likely harbored the same intent to steal in 2012 that he did in 2008. This argument relies on an impermissible inference that defendant possessed a propensity to steal.

¶ 44    The State cites *People v. Brown*, 194 Ill. App. 3d 958 (1989), but that case is distinguishable. In *Brown*, the defendant was charged with attempted burglary. *Id.* at 961. According to the State's evidence, defendant was driving a car for an accomplice, who

attempted to open the window of a home with a screwdriver. *Id.* At trial, the State introduced evidence that defendant's car was at the scene of another burglary "that occurred around the same time" and approximately 4½ blocks from the scene of the attempted burglary. *Id.* at 962. The court held that this evidence properly proved the defendant's identity and intent. *Id.* at 968. With respect to the defendant's intent, the court noted that the defendant "had burglarized another nearby home and used the same general procedure." *Id.*

¶ 45    *Brown* is distinct from this case because the other burglary in *Brown* occurred at nearly the same time and location as the charged offense; it was part of a pattern of crime that same night. Thus, the other-crime evidence showed the defendant's intent *that night*; it did not depend on an inference that the defendant possessed a *general* predisposition to commit crime because of a similar crime he committed four years earlier, as is the case here.

¶ 46    The State contends that evidence of another offense may be admissible to prove intent whenever there are "general areas of similarity" between the other offense and the charged offense. That statement is true but incomplete. While "general areas of similarity" are necessary to admit other-crime evidence under the intent exception–or, for that matter, any other exception to the bar on other-crime evidence–that is not the sole criterion for its admission. See *People v. Illgen*, 145 Ill. 2d 353, 372 (1991) ("It is well established that evidence of another offense may be used only when the other offense has some threshold similarity to the crime charged."). Rather, the other crime must share general areas of similarity with the charged offense *and* be relevant to the defendant's intent. Otherwise, any similar offense would be admissible in any case where the State was required to prove intent, and the intent exception would swallow the rule prohibiting the admission of other-crime evidence.

¶ 47    Defendant's 2008 theft had no bearing on the issue of his intent in 2012. Defendant did not contest intent at trial, and even if intent had been at issue at trial, evidence of the 2008 theft would not have been relevant to that issue. The trial court erred in admitting this evidence on this basis.

¶ 48                                          2. *Identity*

¶ 49    The trial court also found that the 2008 theft was relevant to prove defendant's identity. There is no question that identity was at issue in this case, because defendant denied being the perpetrator of the crime. *People v. Allen*, 335 Ill. App. 3d 773, 780 (2002); *People v. Biggers*, 273 Ill. App. 3d 116, 124 (1995).

¶ 50    The identity exception to the bar on other-crime evidence works in two ways. In the first way, another crime may be used to prove the defendant's identity "by 'link[ing] the defendant to the offense at issue through some evidence, typically an object, from another offense.' " *People v. Martin*, 2012 IL App (1st) 093506, ¶ 35 (quoting *People v. Quintero*, 394 Ill. App. 3d 716, 727 (2009)). For example, where the defendant uses a firearm in one offense and the State has evidence that the same firearm was used in a subsequent offense, evidence of the first offense may be introduced to prove that the defendant committed the second offense. See, *e.g.*, *People v. Coleman*, 158 Ill. 2d 319, 335 (1994); *People v. Richardson*, 123 Ill. 2d 322, 339-40 (1988); *Martin*, 2012 IL App (1st) 093506, ¶ 38.

¶ 51    In this case, neither the State nor the trial court articulated a piece of evidence linking the 2008 theft to the 2012 theft. From our review of the record, there was no common piece of

evidence between the two crimes. Thus, the 2008 theft could not establish defendant's identity under the first approach.

¶ 52    The second way the State may use the identity exception is by proving a defendant's *modus operandi*. *People v. Robinson*, 167 Ill. 2d 53, 64-65 (1995). Under this theory, the State relies "on an inference that a distinctive pattern of criminal activity earmarks the crimes as the work of a particular individual or group." *Id.* at 65. In other words, because the crimes are committed in the same unique way or with the same characteristic signature, it is more likely that the same person committed each of them.

¶ 53    When using other-crime evidence to establish a defendant's *modus operandi*, there must be a " 'strong and persuasive showing of similarity' " between the charged crime and the other-crime evidence. *Id.* (quoting *People v. Tate*, 87 Ill. 2d 134, 141 (1981)). The offenses "must share such distinctive common features as to earmark both acts as the handiwork of the same person." *Illgen*, 145 Ill. 2d at 373. The degree of similarity required to introduce other-crime evidence under the *modus-operandi* or common-design exceptions is higher than for any of the other exceptions. *Wilson*, 214 Ill. 2d at 140-41; *People v. Cruz*, 162 Ill. 2d 314, 349 (1994). Nevertheless, some dissimilarities between the offenses does not mean that a *modus operandi* cannot be shown. *People v. Taylor*, 101 Ill. 2d 508, 521 (1984).

¶ 54    *People v. Miller*, 254 Ill. App. 3d 997 (1993), is indicative of the level of similarity necessary to establish *modus operandi*. There, the defendant was charged with residential burglary after he and his accomplices posed as repairmen and stole money from an elderly woman's house. *Id.* at 998-99. The trial court admitted evidence of two prior incidents where the defendant and his accomplices had performed similar burglaries. *Id.* at 1000-02. The court held that the evidence of the crimes was sufficiently similar and distinctive to establish the defendant's *modus operandi*. *Id.* at 1013. The court noted that all of the burglaries occurred in the same town, in the apartments of elderly women, within a four-month period. *Id.* Critically, in each case, the defendant and his accomplices "entered the apartment under the guise of doing some kind of repair work," then distracted the victim while another accomplice took the money. *Id.* The court stated, "While we acknowledge that access to a residence is often gained by posing as a repairman, we do not think that the similarities in this case are of the type common to most residential burglaries." *Id.*

¶ 55    By contrast, *People v. Allen*, 335 Ill. App. 3d 773 (2002), shows how crimes that appear similar may not be similar enough to establish a *modus operandi*. In *Allen*, the State's evidence showed that the defendant followed a 14-year-old girl in his purple truck as she walked home from school in Springfield. *Id.* at 774-75. The defendant exited his truck, told the girl to "come here," then put a knife to her throat. *Id.* at 775. He put her in his truck, told her that he would not hurt her, and ultimately dropped her off near her house. *Id.* The State introduced evidence that, nearly 10 years earlier, defendant committed a similar crime in Springfield. *Id.* at 776. In that case, the defendant followed a 19-year-old woman walking home from work. *Id.* He pulled up behind her in a maroon and silver sedan, put a knife to her throat, and ordered her to get in the car. *Id.* In the car, the defendant told her he would not hurt her. *Id.* The defendant then drove the woman to a wooded area where he sexually assaulted her and ultimately let her go. *Id.*

¶ 56    The court in *Allen* held that the two crimes were too dissimilar to establish the defendant's *modus operandi*. *Id.* at 781. The court noted that there were no distinctive characteristics about the abductions that would show that they were the work of the same person. *Id.* Instead, the

court found that "most of the similarities [were] general in nature, *i.e.*, using a knife to force an individual who is walking alone into a vehicle." *Id.* The court also noted that the offenses were substantially dissimilar because one case involved a sexual assault while the other did not. *Id.*

¶ 57   This case more closely resembles *Allen* than *Miller*. Like *Allen*, the offenses occurred several years apart. Unlike *Miller*, where the defendants posed as repairmen, defendant did not use any distinctive method to commit the crime. To the contrary, the two bicycles were stolen in one of the most generic ways imaginable: an individual cutting the lock on a bicycle and riding away on it. The characteristics of the bicycle thefts were even less distinctive than the two crimes in *Allen*, where the defendant approached young, walking, female victims in his car and used a knife to threaten them. Indeed, the 2008 theft was not in the same location and did not involve similar victims: Zurek was a 12-year-old boy whereas Greif was an adult.

¶ 58   The State highlights several similarities between the 2008 theft. The State notes that both Zurek's and Greif's bicycles were stolen with "the same method, in the same area, and from helpless victims." However, as we explained above, nothing about the thief's methods in the 2008 or 2012 thefts was distinctive. Moreover, in the 2012 theft, the perpetrator made his getaway in a car, whereas defendant tried to get away on Zurek's bicycle in 2008. While the bicycles were stolen in the same general area, the fact that two bicycle thefts occurred in the same place four years apart would not justify a finding of *modus operandi*. Finally, we fail to see the similarity between the victims in the 2008 and 2012 thefts. Zurek was a 12-year-old boy who locked his bicycle at the library while he got a sandwich. Greif was an adult man who locked his bicycle outside of his physical therapy facility. There was no evidence that defendant targeted Zurek for his age or Greif for his physical ailment. To the contrary, the most ready explanation is that the thief targeted these two victims because they left bicycles unattended in a public place.

¶ 59   The State also contends that the 2008 theft was relevant to proving defendant's identity because the testimony of the witnesses to the 2008 theft "bolster[ed] Woznicki's identification" of defendant as the 2012 thief. Like the State's argument regarding intent, this argument must fail because it relies upon a propensity inference. Woznicki was not a witness to the 2008 theft. Nor were Zurek and Evans witnesses to the 2012 theft. Thus, it is impossible for these witnesses to directly bolster each other's identifications. This is just the propensity inference cloaked in an "identity" argument–the fact that defendant committed the 2008 bike theft "bolsters" the conclusion that that he committed the 2012 bike theft.

¶ 60   The State cites *People v. Johnson*, 368 Ill. App. 3d 1146 (2006), in support of its argument that the testimony regarding the 2008 theft served to bolster Woznicki's identification of defendant in the 2012 case. In *Johnson*, the defendant broke into a husband and wife's apartment and shot them. *Id.* at 1150. The evidence showed that "within hours" of the charged shooting (*id.* at 1156), the defendant had committed a series of other shootings, all for the purpose of avenging the death of his cousin. *Id.* at 1152-53. The shooting for which he was standing trial involved people who were "total strangers" but who lived directly below the defendant's intended target; the State's theory, in other words, was that the defendant had found the right apartment but the wrong floor and ended up shooting people he did not know. *Id.* at 1156. Identity was disputed at trial because the defendant said he did not shoot the couple and they misidentified him as the shooter. The appellate court found that evidence of the other shootings was relevant to prove the continued narrative of the shootings, as well as defendant's common scheme, motive, and intent. *Id.* at 1155-58. The court also found the evidence relevant

to identity because, without the background information on the defendant's vigilante mission that day, the State would be hard-pressed to explain why defendant barged into an apartment of people he did not know and opened fire, and the evidence further "bolster[ed] the [victims'] identification of defendant as their assailant." *Id*. at 1158.

¶ 61     This case bears little resemblance to *Johnson*. In *Johnson*, the victims' identifications of the defendant bolstered one another because the defendant was engaged in one continuous series of shootings related to his cousin's death. There was no propensity inference to draw in *Johnson* because the defendant was engaged in one course of conduct throughout a single day and for a single purpose. Here, the 2008 and 2012 bicycle thefts were not part of a series of related events. They occurred at different times, in different places, and involved unrelated victims.

¶ 62     The trial court erred in introducing evidence of defendant's 2008 theft to prove identity. The 2008 theft did not share any piece of evidence with the 2012 theft that would link defendant to both offenses, and the offenses were not so distinctive and similar to one another to establish a *modus operandi*. We conclude that the trial court abused its discretion in admitting the evidence of the 2008 theft. We now turn to whether that error requires reversal.

¶ 63                                          3. *Harmless Error*

¶ 64     Having found that the trial court abused its discretion in admitting evidence of the 2008 theft, we must consider whether that error requires a new trial. The State contends that any error was harmless because the evidence against defendant was overwhelming.

¶ 65     "The erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal." *People v. Lindgren*, 79 Ill. 2d 129, 140 (1980). However, where the error is harmless beyond a reasonable doubt, reversal is not required. *People v. Cortes*, 181 Ill. 2d 249, 285 (1998). In deciding whether the admission of other-crime evidence is harmless beyond a reasonable doubt, we must ask whether the other-crime evidence was "a material factor in [the defendant's] conviction such that without the evidence the verdict likely would have been different." *Id.* "If the error is unlikely to have influenced the jury, admission will not warrant reversal." *Id.*

¶ 66     We agree with the State that, in this case, the trial court's erroneous admission of the 2008 theft was harmless beyond a reasonable doubt. On the date of the offense, Woznicki saw defendant three separate times in broad daylight from short distances. Crucially, Woznicki took down defendant's license plate number, which permitted the police to obtain defendant's name. And Woznicki identified defendant in a photo array which the police compiled based on the information Woznicki had given them. None of the State's evidence was significantly impeached or undermined. We acknowledge that the State relied on the other-crime evidence extensively in its closing argument, exacerbating its prejudicial effect. However, in light of the overwhelming evidence against defendant–particularly the fact that Woznicki obtained his license plate number–we cannot say that the jury's verdict would have been any different had the State not relied upon the improper other-crime evidence.

¶ 67     Defendant acknowledges the damaging effect of the license-plate evidence, but argues that a rational jury "could have concluded that Woznicki mistakenly took down the wrong license plate, thinking it was the same man driving who[m] he saw take the bike." We think this possibility is remote, at best. It is highly unlikely that, at the same time the thief was putting Greif's bicycle in his car, defendant, who happened to resemble the thief, drove by in a

similar-looking car. It is even more unlikely that Woznicki made a typo when taking down the license plate, as it matched defendant, whom Woznicki identified as the thief. Defendant's hypotheses are not sufficiently plausible to create a reasonable doubt regarding the result of his trial.

¶ 68                                    B. IPI Criminal 4th No. 3.14

¶ 69         Defendant also contends that the trial court erred in omitting a paragraph of IPI Criminal 4th No. 3.14, which would have instructed the jury that it was for them to determine whether defendant committed the 2008 theft and, if so, what weight should be assigned to that evidence. The State contends that defendant forfeited this error by failing to object to the inclusion of the instruction.

¶ 70         In order to preserve a challenge to a jury instruction on appeal, the defendant must object to the instruction at trial and include the error in his posttrial motion. *People v. Mohr*, 228 Ill. 2d 53, 64-65 (2008). Here, defendant did not do either. At the jury instruction conference, defendant renewed his objection to the *admission* of the other-crime evidence; he did not draw the trial court's attention to the erroneous other-crime jury instruction. Similarly, his motion for a new trial challenged the admission of the other-crime evidence, not the instruction. Defendant has forfeited this issue.

¶ 71         One of the principles underlying the forfeiture doctrine is that the failure to raise claims before the trial court deprives it of the chance to correct the error immediately. *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009). Here, had defense counsel called the absence of the third paragraph of this jury instruction to the trial court's attention, we have little doubt that the court would have corrected the oversight on the spot.

¶ 72         Defendant argues that, regardless of his forfeiture, the error in the jury instruction was plain error requiring reversal. When deciding whether an unpreserved error rises to the level of plain error, our first step is to determine whether any error occurred at all. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Thus, we first determine whether the trial court erred in omitting a paragraph from IPI Criminal 4th No. 3.14.

¶ 73         IPI Criminal 4th No. 3.14 contains three paragraphs. The first paragraph informs the jury that it has heard evidence that the defendant has been involved in another offense or conduct other than the alleged offense. IPI Criminal 4th No. 3.14. The second limits the jury's consideration of that evidence to the purpose for which it has been introduced, *e.g.*, motive, intent, identity, or any other purpose. *Id.* The third paragraph, the one missing from the instruction in this case, as applicable to this case would have stated as follows: "It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issues of intent and identity." *Id.* According to the Committee Note to IPI Criminal 4th No. 3.14, this third paragraph "makes clear to the jury that the limited evidence which is the subject of this instruction is still to be weighed by them; they are free to accept or reject it as they see fit." IPI Criminal 4th No. 3.14, Committee Note. Moreover, the Committee Note states that, "[w]henever this instruction is given, all three paragraphs (in whatever form is applicable) must be given to the jury." *Id.*

¶ 74         In this case, the trial court's version of IPI Criminal 4th No. 3.14 did not include the third paragraph. As the instruction itself makes clear, all three paragraphs of the instruction must be given. Moreover, Illinois Supreme Court Rule 451(a) (eff. Apr. 8, 2013) provides that a trial court must give the applicable IPI for an issue, unless the court determines that the IPI does not

accurately state the law. The trial court made no such finding. From the record, we can discern no reason for omitting the third paragraph. Thus, we conclude that the trial court erred in delivering an incomplete version of IPI Criminal 4th No. 3.14.

¶ 75    We now turn to whether the trial court's omission of the third paragraph of IPI Criminal 4th No. 3.14 constitutes plain error. Plain error occurs in two scenarios: (1) where " 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error' "; or (2) where " 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 76    While defendant argues that we should reverse his conviction "under either prong of plain error," he only discusses the second prong of plain error. We will thus focus only on the second prong. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *People v. Ramirez*, 402 Ill. App. 3d 638, 644 (2010) (points not argued on appeal are forfeited). We note that, even if defendant did discuss the first prong of plain error, we would find that the evidence in this case was not closely balanced. To the contrary, as we discussed above, the evidence against defendant was overwhelming.

¶ 77    When an error is made regarding jury instructions, the error constitutes plain error under the second prong where it "creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *People v. Sargent*, 239 Ill. 2d 166, 191 (2010). Defendant argues that such a "serious risk" existed here where the jury was not told that it could assign the other-crime evidence whatever weight it wanted. According to defendant, this error is worse because the omission of the third paragraph of IPI Criminal 4th No. 3.14 "implicitly instructed [the jury] that it *had* to consider the prior crime evidence as relevant to [his] identity and intent." (Emphasis in original.)

¶ 78    Defendant cites *People v. Johnson*, 2013 IL App (2d) 110535, in support of his contention. In *Johnson*, the defendant was charged with two fairly distinct offenses–unlawful possession of a weapon by a felon and domestic battery. *Id.* ¶¶ 4-5. The trial court permitted the State to present evidence that defendant had committed prior incidents of domestic battery in order to show his propensity to commit domestic battery. *Id.* ¶¶ 7, 9-10; see also 725 ILCS 5/115-7.4 (West 2010) (permitting propensity evidence in domestic violence cases). The parties also stipulated that the defendant had been convicted of a felony for purposes of the unlawful possession of a weapon charge. *Johnson*, 2013 IL App (2d) 110535, ¶ 29. The trial court instructed the jury that it could use the parties' stipulation regarding the felony " 'like any other evidence in this case' " in reaching its verdict. *Id.* The trial court also delivered a version of IPI Criminal 4th No. 3.14, which said that the jury could use the other-crime evidence " 'on the issues of [the] defendant's intent, motive, design, knowledge, absence of mistake, and propensity.' " *Id.* ¶ 69.

¶ 79    On appeal, the court held that the trial court erred in failing to tailor IPI Criminal 4th No. 3.14 based upon the different uses of the different other-crime evidence. *Id.* ¶ 75. The court noted that, in the unlawful-possession case, the jury should not have considered the prior domestic violence incidents for propensity. *Id.* And in the domestic-battery case, the jury should not have considered defendant's prior felony conviction. *Id.* The court further held that

this error constituted second-prong plain error, because it undermined the defendant's right to a fair trial. *Id.* ¶ 76.

¶ 80 Defendant argues that this case, like *Johnson*, involves a defective version of IPI Criminal 4th No. 3.14. But the error in this case is much less egregious than in *Johnson*. In *Johnson*, the instructions improperly told the jury to consider the other-crime evidence for purposes of both charges, which were erroneously tried at the same time (*id.* ¶¶ 40-58), when it should have limited the jury's consideration of the other-crime evidence to the respective charges to which they were admissible. Here, there was no improperly joined charge. Moreover, the erroneous version of IPI Criminal 4th No. 3.14 in this case did not expressly tell the jury to consider the evidence for propensity, like the instruction in *Johnson*. Thus, the instruction in this case did not contain an affirmative misstatement of the law; it was simply incomplete.

¶ 81 We also disagree with defendant's claim that, by omitting the third paragraph of IPI Criminal 4th No. 3.14, the trial court implicitly told the jury that it was required to accept the other-crime evidence. The trial court's instruction told the jury that it "may" consider the other-crime evidence for purposes of intent and identity. Another instruction informed the jury that its duty was to determine the facts from the evidence in the case. Yet another told the jury that it could give whatever weight it deemed appropriate to the testimony of witnesses in the trial, which obviously would include the testimony given by the witnesses to the 2008 bike theft. Nowhere in the instructions was the jury told that it was required to accept the other-crime evidence and give it full weight.

¶ 82 While the trial court erred in failing to instruct the jury that it could weigh the other-crime evidence, that error did not create a serious risk that the jury misapplied the law. The jury was told that it "may" consider the other-crime evidence and that, as the trier of fact, it was responsible for determining the facts and holding the State to the burden of proof beyond a reasonable doubt. We conclude that, in this case, the omission of the third paragraph of IPI Criminal 4th No. 3.14 did not create a serious risk that the fairness of defendant's trial was jeopardized.

¶ 83                                III. CONCLUSION

¶ 84 For the reasons stated above, we affirm defendant's conviction. The trial court erred in admitting improper other-crime evidence and in failing to give the jury a complete version of IPI Criminal 4th No. 3.14. However, the admission of the other-crime evidence was harmless beyond a reasonable doubt because of the overwhelming evidence against defendant, and the incorrect instruction did not rise to the level of plain error.

¶ 85       Affirmed.