NOTICE

Decision filed 07/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220830-U

NO. 5-22-0830

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 16-CF-539 |
| | ) | |
| KENNETH B. WILLIAMS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore* and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion by admitting other-crimes evidence where its probative value outweighed its prejudicial effect. However, we vacate defendant's sentence and remand for a new sentencing hearing where the trial court erred by entering a consecutive sentence without advising defendant of his right to elect the sentencing provision under which he should be sentenced when, prior to his sentencing, the statute was amended such that a consecutive sentence was discretionary.

¶ 2    The defendant, Kenneth Williams, appeals his conviction for armed habitual criminal following a jury trial in the circuit court of Champaign County. He also challenges his 27-year sentence. On appeal, defendant argues that the trial court erred (1) by admitting other-crimes evidence of a shooting event which took place approximately one month prior to the charged

_____

*Justice Welch participated in oral argument. Justice Moore was later substituted on the panel and has read the briefs and listened to the recording of oral argument.

1

conduct and (2) imposing mandatory consecutive sentencing. For the following reasons, we affirm defendant's conviction but remand for resentencing.

¶ 3                                    I. BACKGROUND

¶ 4        The record in this case is extensive. We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5        In April 2016, the State charged defendant with being an armed habitual criminal (count I) (720 ILCS 5/24-1.7 (West 2014)), alleging that in April 2016 he knowingly possessed a firearm after having been previously convicted of two separate Class 2 felony offenses. In May 2016, the State charged defendant with a second count of being an armed habitual criminal (count II) (*id.*), alleging that in May 2016 he possessed a pistol which was fitted with a laser sight after he had been convicted of two separate Class 2 felony offenses.

¶ 6        The trial court appointed the public defender to represent defendant, but in March 2017, defendant informed the court that he wished to proceed *pro se*. The court did not admonish defendant as required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). Later, defendant hired an attorney to represent him. However, in September 2017, private counsel withdrew from the case without any objection by defendant, who then again proceeded *pro se*. At that hearing, the court again failed to admonish defendant pursuant to Rule 401(a).

¶ 7        In February 2019, the matter proceeded to a jury trial. The jury convicted defendant of count II but acquitted him of count I. The court later sentenced defendant to 30 years in prison, mandatory consecutive to a 10-year sentence he was already serving. See *People v. Williams*, 2019 IL App (4th) 170075-U.

¶ 8      Defendant appealed, arguing that the trial court erred by failing to comply with Rule 401(a) before the court twice allowed defendant to discharge his counsel and represent himself. The State conceded that defendant was entitled to a new trial because of the trial court's failure to admonish him pursuant to Rule 401(a). The Fourth District accepted the State's concession and reversed and remanded for a new trial. See *People v. Williams*, No. 4-19-0203 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).[1]

¶ 9      Upon remand, the trial court arraigned defendant on the second count of armed habitual criminal for the May offense. At defendant's request, the trial court appointed counsel.

¶ 10     On July 12, 2021, the State filed a motion to admit evidence of other bad acts. The motion noted that defendant was found not guilty on count one. However, the State sought to admit evidence of defendant's identification by witnesses on April 13, 2016, who observed him firing the same gun found in his close proximity on May 4, 2016. The State's motion indicated that it intended to show identity of the weapon through testimony from forensic experts that the casings collected on April 13, 2016, came from the firearm recovered on May 4, 2016. The State's motion indicated that this evidence did not constitute "other bad acts evidence" but rather was relevant probative evidence of defendant's guilt. The State argued that the evidence was admissible to show defendant's identity, opportunity to commit the charged offense, and a common design.

¶ 11     Represented by counsel, defendant opposed the admission of the evidence. He argued that the prejudicial value substantially outweighed the probative value. Moreover, defendant argued that there must be more than "a mere suspicion that the alleged conduct occurred." Defendant noted that if the State were allowed to present the evidence, the jury should receive a limiting

---

[1]We note that the trial proceedings took place under the jurisdiction of the Fourth District. After the Fourth District issued decisions on direct appeal, Champaign County was redistricted from the Fourth District to the Fifth District. Ill. S. Ct., M.R. 30858 (eff. Dec. 8, 2021).

instruction stating that he was acquitted for the offense. The State agreed that a limiting instruction was proper, however, the State objected to an instruction informing the jury that defendant was acquitted of the offense.

¶ 12    The motion proceeded to a hearing where the trial court heard arguments from the parties. In its ruling, the court pointed to *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 69, for the position that evidence of a prior offense, of which defendant was acquitted, could be considered to prove defendant's identity in a subsequent trial. See also *Dowling v. United States*, 493 U.S. 342, 347-50 (1990). Thus, the court noted that defendant's acquittal of the April conduct was not a bar to the admission of the evidence at the subsequent trial. Rather, the court noted that it must consider whether the evidence would unduly prejudice defendant, and whether the probative value outweighed its prejudicial impact.

¶ 13    The trial court noted that identification "can be through an object." The court noted that the evidence was relevant where defendant was charged with possession of a weapon in May 2016, and the evidence demonstrates that a month earlier, he possessed the identical weapon. Therefore, the court determined that the probative value of the evidence outweighed the prejudicial impact. However, the court expressly noted that it would offer a limiting instruction.

¶ 14    In January 2022, defendant sent a letter to the court requesting to proceed *pro se*. The court admonished defendant and accepted his waiver of the right to counsel.

¶ 15    The court held a hearing on all pretrial motions. At the hearing, the trial court considered whether evidence of defendant's possession of a bulletproof vest or body armor was admissible. The trial court noted that possession of armor "can be illegal under certain circumstances" and therefore possession of it was "potentially[ ]" a bad act. The court determined that possession of body armor and the weapon at dispute were "intertwined very closely" and the evidence was not

4

"unduly prejudicial." Rather, the evidence was "part of the circumstances of his arrest." Therefore, the court denied defendant's motion to exclude the evidence. However, the court noted that it would instruct the jury at the time the evidence was admitted that the evidence was "only being introduced for the purpose of, such as knowledge or intent, and not for any other purpose."

¶ 16    Prior to trial, during a status hearing, defendant asked for a jury instruction advising the jury that he was acquitted of count one. Specifically, defendant asked:

> "When it comes to the jury instructions, your Honor, I was wondering will we be issuing—I would—I would love for us to, I would love for us to issue a jury instruction allowing the jury to know that I was found not guilty of count one, since that's the basis in the—the basket of what the State will be using to push for the conviction, or push for trial."

The trial court advised defendant that jury instructions would be decided later. The court noted, "I'm not aware of any case law anywhere that would allow us to advise the jury that you were found not guilty of certain counts."

¶ 17    On August 22, 2022, the matter proceeded to a second jury trial. Following jury selection, the State called Crystal Mathews as its first witness. Prior to Mathews' testimony, the court admonished the jury as follows:

> "Evidence is about to be received that the defendant has been involved in conduct other than that charged in the information—in the information. This evidence will be received on the issue of the defendant's identification and may be considered by you only for that limited purpose.
> It is for you to determine whether the defendant was involved in that conduct, and if so, what weight should be given to this evidence on the issue of identification."

¶ 18    Mathews testified about the April 2016 conduct. Mathews testified that she lived near Hedge road, and she was asleep on April 13, 2016, at about 1 o'clock in the afternoon. She was startled awake when she heard gunfire. She heard "[m]any" gunshots, and she indicated that there were "[t]oo many to count." Mathews testified that she "jumped up" and looked out of her window

5

into her front yard. She "saw a gentleman firing a gun." Mathews testified that "Mr. Williams" was the shooter. Mathews identified defendant in the courtroom. Mathews testified that she observed the firearm. She testified that the firearm was black and silver.

¶ 19    Next, Kaitlin Fisher, a patrol sergeant with the Champaign Police Department, testified. Sergeant Fisher testified that on April 13, 2016, she responded to an incident at Hedge road. Sergeant Fisher recovered Winchester 9-millimeter Luger shell casings from the scene. Sergeant Fisher collected each shell casing and placed each casing in its own cardboard collection box. Each cardboard box was placed in its own brown paper bag. The bag was then sealed with red evidence tape with Sergeant Fisher's badge number, initials, and the date on the tape. Sergeant Fisher also testified that an empty Smith and Wesson magazine was recovered.

¶ 20    Trent Shumway next testified. Shumway testified that on May 4, 2016, he resided on North McKinley street in Champaign with his wife and two children. Shumway testified that he brought his two children home from daycare. Shumway made them lunch, and while preparing lunch, he observed four or five police officers in "lots of gear, body armor, very large weapons" walking through his backyard. Shumway went outside and asked the officers what was "going on." The officers advised Shumway to go back into the house.

¶ 21    Shumway testified that the officers found a gun in his backyard. The officers used Shumway's patio table to "take all the pictures of the weapons and the magazines and rounds and that sort of stuff." Shumway observed the firearm and testified that it was a "black and silver handgun." Shumway identified a photograph of the firearm.

¶ 22    Detective Dustin Sumption testified. On May 4, 2016, Detective Sumption was working in his official capacity as a Special Deputy United States Marshal. On that date, Detective Sumption lead a fugitive investigation on defendant. He ran surveillance on a residence on North James

Street. Detective Sumption observed defendant leave the residence and walk east. Another officer "had eyes on" defendant as defendant walked north. Detective Sumption went to defendant's residence and received permission to search the home. He recovered a live round of Winchester 9-millimeter Luger ammunition from under defendant's bed in the basement. Detective Sumption testified that this was the same ammunition recovered by Sergeant Fisher in April.

¶ 23 Matt Ballinger, a deputy chief with the University of Illinois Police Department, next testified. At the time of the May incident, he was a sergeant with the Champaign County Street Crimes Task Force. Deputy Chief Ballinger assisted in the apprehension of defendant. He identified defendant in court. Deputy Chief Ballinger testified that he observed defendant walking north after receiving location information from Detective Sumption. Deputy Chief Ballinger exited his vehicle, made eye contact with defendant, and defendant "spun and began to run." Deputy Chief Ballinger pursued defendant. Defendant grabbed the front of his hoodie, jumped a fence, and Deputy Chief Ballinger lost sight of him. Defendant was subsequently apprehended by other officers.

¶ 24 Deputy Chief Ballinger received the firearm from another officer, and he "made the weapon safe." Deputy Chief Ballinger testified that the firearm was a Smith and Wesson 9-millimeter. The weapon was loaded with 9-millimeter Luger Winchester ammunition. There was a "small laser" affixed to the firearm used for "target identification." Deputy Chief Ballinger testified that the firearm was "ready to fire" because "it had a round in the chamber and it had round in the magazine." Deputy Chief Ballinger testified that "once you fired it once, it could reload itself."

¶ 25 Officer Cully Schweska with the Champaign Police Department Street Crimes Task Force next testified. Officer Schweska followed defendant as he fled from law enforcement. He identified

7

defendant in court. Upon defendant's arrest, Officer Schweska "retraced" defendant's "suspected flight path" searching for contraband or items of evidentiary value that defendant may have discarded as he fled from the police. Officer Schweska observed a broken fence in the rear of a residence on defendant's flight path. He located a firearm in the garden bed of the residence. Officer Schweska identified the firearm as a black Smith and Wesson handgun.

¶ 26    Matthew Henson, the director of the Coles-Moultrie County 9-1-1, next testified. At the time of the May event, Henson was a sergeant in charge of the Champaign Police Department Street Crimes Task Force. Sergeant Henson was involved in defendant's May apprehension with other members of the street crimes task force. Upon defendant fleeing, Sergeant Henson contacted defendant, pointed his weapon at defendant, and commanded him to stop. Defendant stopped and lay down on the ground. Sergeant Henson searched defendant incident to arrest and noted that he was wearing a bullet proof vest. Defendant was taken into custody.

¶ 27    Detective Robb Morris from the City of Champaign Police Department next testified. Detective Morris was part of the unit tracking defendant, and Detective Morris made direct contact with defendant during his flight. Detective Morris was armed with an AR-15 assault rifle, and he ordered defendant to the ground. Other officers made the arrest. Detective Morris ultimately took possession of the firearm found in the nearby backyard, which was packaged and sealed in an evidentiary box. Detective Morris testified that he was "present when the body armor was discovered" and he "took a couple photos of [defendant] wearing the body armor."

¶ 28    Vicki Reels, a forensic scientist with the Illinois State Police Forensic Sciences Command, testified on the second day of the jury trial. Reels specialized in firearms, footwear, and tire track examinations. Reels reviewed the firearm, magazine, and cartridge casings. Reels testified that all of the fired casings were Winchester 9-millimeter Luger cartridges. She testified that the firearm

was a 9-millimeter Smith and Wesson with a magazine holding Winchester 9-millimeter Luger cartridges. Reels testified that the Smith and Wesson firearm fired all of the 9-millimeter cartridges that were submitted for testing. Defendant did not object to any portion of Reels' testimony, nor did he subject her to meaningful cross-examination.

¶ 29    Amanda Humke, a forensic scientist with the Springfield Forensic Science Laboratory, next testified. She worked as an analyst in the biology and DNA section. She received evidence from law enforcement and collected samples for DNA. Humke swabbed the recovered firearm and magazine for any deposited DNA.

¶ 30    Jennifer Acosta-Talbot, a forensic scientist specializing in forensic biology and DNA analysis with the Illinois State Police, next testified. Acosta-Talbot was tendered as an expert in the area of forensic DNA analysis without objection from defendant. Acosta-Talbot testified that she compared the DNA samples recovered from the firearm and magazine against defendant's known DNA standard which he submitted to law enforcement. The swabbing from both the firearm and the magazine showed a mixture of DNA from at least two people. The major profile on both the firearm and magazine was consistent with defendant's standard. Therefore, Acosta-Talbot testified that defendant was included as a contributor to the DNA on both the firearm and magazine.

¶ 31    A sidebar was held during Acosta-Talbot's testimony. Defendant sought to introduce evidence and testimony that there was contamination to the evidence from the April conduct. Defendant seemingly did not seek to introduce evidence that he was acquitted of the April conduct, but rather that there was "contamination in the lab" as it related to the ammunition recovered in April. After hearing arguments from the parties, the court allowed defendant to inquire into Acosta-Talbot's personal experience finding contamination on weapons and firearms, but the court

9

barred any questions related to the contamination "having to do with an April incident or firearm from April."

¶ 32    Karri Sherwood Broaddus, a forensic scientist with the Illinois State Police Forensic Science Laboratory, testified. The court accepted Broaddus as an expert in the area of forensic DNA analysis without objection. Broaddus testified that she used STRmix analysis, a software application used as a tool for DNA mixture interpretation. Broaddus entered the DNA data into the software system, and she determined that the major profile contributed 94% of the DNA, and the minor profile contributed 6% of the DNA. She compared defendant's known DNA standard, and the DNA profile was more likely to have originated from defendant and an unknown contributor than two unknown contributors. Therefore, Broaddus testified that the evidence supported the proposition that the DNA recovered from the firearm came from defendant and an unknown individual. Following Broaddus' testimony, the State rested.

¶ 33    Relevant to this appeal, defendant called Dr. Karl Reich, a scientist in a forensic DNA laboratory. Dr. Reich testified that there was a partial DNA profile recovered from the swabs which constituted a mixture of at least three DNA profiles on the firearm. He testified that defendant could not be excluded as a contributor to the DNA mixture.

¶ 34    Defendant testified. He testified that on May 4, 2016, he was gambling at the home on North James Street. He left the residence, heard the screeching of tires, and ran away. Defendant denied knowing police officers were chasing him. He denied hearing officers yell at him to stop. Defendant testified that he ran between houses, hopped fences, and passed through yards. When he heard officers yelling at him to stop, he put up his hands and lay on the ground. Defendant testified that he did not know why officers were looking for him.

¶ 35 Defendant testified that he wore a bulletproof vest, because he was robbed previously and shot. Defendant stated that he wore the vest for safety. He denied possessing a firearm on May 4. He denied discarding a firearm. Defendant admitted that he ran through Shumway's backyard, and he admitted that he ran by the location where police recovered the firearm. Following his testimony, defendant rested.

¶ 36 The matter proceeded to a jury instruction conference. The court noted that the other-crimes evidence instruction "was already given at the defendant's request earlier." See IPI Criminal 4th No. 3.14. However, the State requested that the court modify the instruction to indicate that evidence of the April conduct was admissible not only for purposes of identification, but also as both knowledge and possession. Following argument from the parties, the court determined that the evidence was admissible for identification, as well as knowledge and possession, and the court concluded that it would instruct the jury accordingly. The court noted that the instruction would be given over defendant's objection.

¶ 37 Defendant renewed his request that the jury be instructed that he was acquitted "of the testimony that Crystal Mathews provided." The court responded that there was no "case law to support either of those theories." Therefore, the court denied defendant's instruction request. The State asked for "a few minutes" to research the issue of whether the jury should be advised about defendant's acquittal. The State noted that "it could be done with a stipulation" but that if defendant did not wish to stipulate, "then it's a nonissue." Defendant again stated that be believed that the jury should be advised about the acquittal. The court stated, "Only if there's case law to support that I will allow it. Otherwise, I'm not going to allow it." The trial court allowed the parties time to research the issue before proceeding to closing arguments. Upon returning from recess, the State noted that it considered *People v. Baldwin*, 2014 IL App (1st) 121725. The State stated that the

11

case "indicate[d] to me that we're proceeding appropriately." The court agreed and brought the jury back for closing arguments.

¶ 38    The trial court read the jury instructions aloud to the jurors. Specifically, the court advised the jury: "Evidence has been received that the defendant has been involved in conduct other than that charged in the information. This evidence has been received on the issues of the defendant's identification, knowledge, and possession, and may be considered by you only for those limited purposes. It is for you to determine whether the defendant was involved in that conduct, and if so, what weight should be given to this evidence on the issues of identification, knowledge, and possession."

¶ 39    After deliberating for 40 minutes, the jury found defendant guilty of being an armed habitual criminal. The jury determined that the State proved the allegation that the firearm had a laser sight attached.

¶ 40    Defendant filed a posttrial motion arguing that the trial court erred by admitting other-crimes evidence. Following a hearing and argument from the parties, the court denied the motion. The court noted that there was value and relevance to Mathews testimony about the April conduct. The court also determined that evidence related to defendant wearing body armor was relevant. Turning to the other-crimes jury instruction, the court noted that it initially instructed the jury prior to trial that the other-crimes evidence was admissible for two purposes, but at the end of the trial, instructed the jury that it was admissible for three purposes. The court noted that there was no "material prejudice to the defendant" related to the instructions.

¶ 41    Turning to defendant's request for a jury instruction advising the jury that he was found not guilty for the April conduct, the court noted that the evidence was not introduced as evidence of propensity. Rather, the prior bad act "was introduced for a limited purpose such as for identity."

12

Therefore, the court distinguished the sex-crimes cases provided by defendant. The court stated the following:

> "Based on Ms. Mathews' limited testimony, I think she was on the stand for maybe 20 minutes out of a multiday trial, and she identified the defendant. I don't think it was provocative or shocking in any value. But she was able to identify him. It was introduced for a limited purpose of such as identity. An instruction was given to the jury. Nobody really dwelled on this fact in cross-examination or in closing arguments.
>
> I think that telling the jury of an acquittal would have muddied the waters. Confused the jury quite a bit. I would note that the instruction I believe—I don't have it in front of me—did not say that the defendant may have committed prior offenses. I believe that it was read to them prior conduct. Which again minimizes the fact that he was prosecuted, there was a trial, and so on and so forth.
>
> In the court's discretion, the court finds that the probative value of introduction of the evidence outweighed the prejudicial effect on the defendant. And I also think that the same ruling, but in the flip side, is appropriate for the court in not telling the jury that it ended up in a not guilty finding.
>
> I do believe that it is a well-argued motion. It is a valid point. There is case law going both ways, but ultimately I think it's at the court's discretion. It's very fact specific. Based on the facts of this case, I think the court's rulings were appropriate."

¶ 42    The matter proceeded to sentencing. The court noted that defendant's sentence would be consecutive with the other case for which defendant was already serving a prison sentence. The court sentenced defendant to 27 years in prison, to be served consecutively to case No. 15-CF-656. Defendant appealed.

¶ 43    Defendant later filed a *pro se* post sentencing motion. The trial court gave defendant the option to withdraw his post sentence motion, thereby continuing with his appeal, or withdrawing his appeal and resolving the post sentence motion. Defendant elected to withdraw his post sentence motion.

¶ 44                                    II. ANALYSIS

¶ 45    Defendant raises numerous arguments on appeal. First, he contends that he was denied a fair trial, because the trial court allowed the State to "introduce superfluous and highly prejudicial

13

other-crimes evidence concerning an offense of which he was acquitted." Alternatively, defendant argues that the court erred by denying him an opportunity to present evidence that he was acquitted of the offense in the State's other-crimes evidence. Second, defendant argues that his due process rights were violated when the court applied an outdated statute that mandated consecutive sentencing, and "failed to apprise" defendant of his "right to elect to be sentenced under the amended statute in effect on the date of his sentencing hearing." For the reasons that follow, we affirm the trial court's admission of other-crimes evidence. However, we remand this matter for resentencing. We address each argument in turn.

¶ 46                              A. Other-Crimes Evidence

¶ 47    First, defendant argues that he was denied a fair trial, because the trial court allowed the State to introduce "superfluous and highly prejudicial other-crimes evidence" related to the April conduct. The State responds, noting that the trial court properly admitted the other-crimes evidence as proof of identity, intent, lack of mistake, and knowing possession of the same firearm. We agree with the State.

¶ 48    "The term 'other-crimes evidence' encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial." *People v. Spyres*, 359 Ill. App. 3d 1108, 1112 (2005). The decision on whether to admit or exclude evidence must be made by the trial court responsible for evaluating the probative value of the evidence on a case-by-case basis, and a reviewing court may not substitute its judgment for that of the trial court on matters within the trial court's discretion. *People v. Illgen*, 145 Ill. 2d 353, 370-71 (1991). Thus, where reasonable minds could differ about the admissibility of the evidence, no abuse of discretion is found. *People v. Donoho*, 204 Ill. 2d 159, 186 (2003).

14

¶ 49 Generally, proof of other-crimes not related to those alleged in the charging instrument cannot be introduced to show the defendant's propensity to commit crime. *People v. Hale*, 326 Ill. App. 3d 455, 462 (2001). However, an exception to the general rule is that other-crimes evidence is admissible where it is relevant to show intent, knowledge, identity, motive, absence of mistake, or *modus operandi* (Ill. R. Evid. 404(b) (eff. Jan. 1, 2011)) or "if relevant to establish any material question other than the propensity to commit a crime" (*People v. Thingvold*, 145 Ill. 2d 441, 452 (1991)). "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence in the case more probable or less probable than it would be without the evidence." *People v. Bedoya*, 325 Ill. App. 3d 926, 937 (2001). But even where other-crimes evidence is admissible for a permissible, the evidence should be excluded "where the probative value of that evidence is substantially outweighed by the prejudicial effect on defendant's right to a fair trial." *People v. Robinson*, 167 Ill. 2d 53, 62-63 (1995).

¶ 50 However, "[i]dentity is at issue whenever the defendant denies he was the offender." *People v. Boyd*, 366 Ill. App. 3d 84, 92 (2006). When relevant to show identity or bolster a victim's identification of the perpetrator, other-crimes evidence is admissible. *People v. Johnson*, 368 Ill. App. 3d 1146, 1158 (2006).

¶ 51 Under the facts presented, we find no error by the trial court in admitting the other-crimes evidence related to the April conduct where this evidence was both relevant and probative on the issue of identification. The evidence adduced that Mathews observed defendant firing a gun on April 13, 2016. The same gun was later recovered in defendant's close proximity on May 4, 2016. The testimony from forensic experts established that the casings collected on April 13, 2016, came from the firearm recovered on May 4, 2016. Defendant denied possessing the firearm recovered on May 4, 2016. The trial court admitted the evidence to demonstrate defendant's identity,

15

knowledge, and possession of the firearm. The court expressly determined, on more than one occasion, that the probative value outweighed the prejudicial impact of the evidence. The court also noted that it would offer a limiting instruction.

¶ 52    Defendant specifically complains about the testimony of Crystal Mathews. Mathews testified about the April 2016 conduct. Mathews testified that she lived near Hedge road, and she was asleep on April 13, 2016, at about 1 o'clock in the afternoon. She was startled awake when she heard gunfire. She heard "[m]any" gunshots, and she indicated that there were "[t]oo many to count." Mathews testified that she "jumped up" and looked out of her window into her front yard. She "saw a gentleman firing a gun." Mathews testified that "Mr. Williams" was the shooter. Mathews identified defendant in the courtroom. Mathews testified that she observed the firearm. The firearm was black and silver. Mathews testimony spanned 19 pages of the record, and the trial court noted that she testified for approximately 20 minutes over the course of a multi-day trial.

¶ 53    Prior to hearing Mathews testimony, the trial court instructed the jury as follows: "Evidence is about to be received that the defendant has been involved in conduct other than that charged in the information ***." The court instructed the jury: "This evidence will be received on the issue of the defendant's identification and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that conduct, and if so, what weight should be given to this evidence on the issue of identification." Moreover, at the close of all evidence, the trial court instructed the jury as follows:

> "Evidence has been received that the defendant has been involved in conduct other than that charged in the information. This evidence has been received on the issues of the defendant's identification, knowledge, and possession, and may be considered by you only for those limited purposes. It is for you to determine whether the defendant was involved in that conduct, and if so, what weight should be given to this evidence on the issues of identification, knowledge, and possession."

16

¶ 54 Following defendant's conviction, the court considered defendant's posttrial motion alleging that the other-crimes evidence was wrongly introduced. The court noted that the evidence was not introduced as evidence of propensity. The court stated the following:

> "Based on Ms. Mathews' limited testimony, I think she was on the stand for maybe 20 minutes out of a multiday trial, and she identified the defendant. I don't think it was provocative or shocking in any value. But she was able to identify him. It was introduced for a limited purpose of such as identity. An instruction was given to the jury. Nobody really dwelled on this fact in cross-examination or in closing arguments.
>
> I think that telling the jury of an acquittal would have muddied the waters. Confused the jury quite a bit. I would note that the instruction I believe—I don't have it in front of me—did not say that the defendant may have committed prior offenses. I believe that it was read to them prior conduct. Which again minimizes the fact that he was prosecuted, there was a trial, and so on and so forth.
>
> In the court's discretion, the court finds that the probative value of introduction of the evidence outweighed the prejudicial effect on the defendant. And I also think that the same ruling, but in the flip side, is appropriate for the court in not telling the jury that it ended up in a not guilty finding.
>
> I do believe that it is a well-argued motion. It is a valid point. There is case law going both ways, but ultimately I think it's at the court's discretion. It's very fact specific. Based on the facts of this case, I think the court's rulings were appropriate."

¶ 55 The record demonstrates that the trial court engaged in a meaningful balancing of the evidence on numerous occasions throughout these proceedings—pretrial, during the trial, and posttrial. Nonetheless, we must consider whether the relevance of the evidence is outweighed by its prejudicial impact. "Whether the probative value of other-crimes evidence is outweighed by its prejudicial impact is a determination left to the trial court's discretion, and we will not disturb that decision absent a clear abuse of discretion." *Spyres*, 359 Ill. App. 3d at 1114. The trial court is in the best position to weigh the prejudicial impact of the other-crimes evidence versus its probative value in the context of the entire case. *Id.* at 1114-15.

¶ 56 In the case before us, defendant was charged with armed habitual criminal. The primary issue at trial was whether defendant possessed the firearm recovered by law enforcement in May

17

2016. Based on the testimony and evidence at trial, the other-crimes evidence presented to the jury was relevant to identify defendant as the possessor of the May firearm. Mathews offered eyewitness testimony placing the gun at dispute in defendant's hand in April 2016. Evidence offered for the May offense was largely circumstantial, where the gun was found in defendant's flight path. Succinctly stated, Mathew's testimony and evidence of the April conduct placed the same gun directly in defendant's hand. The trial court carefully analyzed the probative value of this other-crimes evidence, and it specifically considered the risk of undue prejudice. Reviewing the trial court's decision under the appropriate standard, we conclude that the trial court did not abuse its discretion by determining that the probative value of the other-crimes evidence outweighed its prejudicial effect.

¶ 57    Defendant contends that the trial court erred by permitting the State to conduct two separate mini-trials regarding the other-crimes evidence. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011); *Illgen*, 145 Ill. 2d 353. However, a trial court must carefully limit the details of the other-crimes evidence to what is necessary to illuminate the issue for which the other crime was introduced. *People v. Aleman*, 313 Ill. App. 3d 51, 65 (2000); *Boyd*, 366 Ill. App. 3d at 94. The admission of other-crimes evidence should not lead to mini-trials on uncharged offenses. *Boyd*, 366 Ill. App. 3d at 94.

¶ 58    In the case at bar, a relatively minimal amount of other-crimes evidence was offered to the jury. As noted by the court, Mathews testified for approximately 20 minutes. Detective Sumption's testimony largely centered on the events which took place in May. Finally, Reed directly linked the gun from the April incident, during which an eyewitness testified that defendant held the

18

firearm, to the gun recovered in the May incident. This testimony was relevant to connect the evidence found at the crime scene to defendant himself, and the testimony did not lead to a mini-trial on the April conduct. After carefully examining the record and considering all of the evidence, we find that the court did not abuse its discretion by allowing introduction of this evidence.

¶ 59     Finally, we note that the trial court offered a limiting instruction to the jury that the other-crimes evidence was to be received on the issue of defendant's identity, knowledge, and possession of the firearm. See IPI Criminal 4th No. 3.14. The court read the instruction to the jury prior to Mathews' testimony. Additionally, at the close of evidence, the trial court gave the jury a limiting instruction that the other-crimes evidence was to be received on the issues of identity, knowledge, and possession. "When the trial court admits other-crimes evidence for a non-propensity purpose, it should instruct the jury to consider the evidence *only* for that purpose." (Emphasis in original.) *People v. Potts*, 2021 IL App (1st) 161219, ¶ 175. The appropriate limiting instruction, which was given by the trial court at the end of the trial, is set forth in Illinois Pattern Jury Instructions, Criminal, No. 3.14. *Id.* ¶¶ 175-76. The limiting instruction given by the trial court substantially reduced the prejudicial impact, if any, which may have resulted by virtue of the admittance of such evidence. "A jury is presumed to follow a trial court's jury instructions." *People v. Tapley*, 2020 IL App (2d) 190137, ¶ 81.

¶ 60     As an alternative argument, defendant argues that he was denied a fair trial where the trial court erred by denying defendant the opportunity to present evidence that he was acquitted of the April conduct. Defendant, proceeding *pro se*, made numerous requests to *instruct the jury* that he was acquitted of the April conduct. The court considered defendant's jury instruction request on multiple occasions—pretrial, during the trial, and posttrial. The court allowed defendant numerous opportunities to be heard and allowed both defendant and the State to conduct research to provide

19

to the court demonstrating whether such an instruction was permissible. After research conducted by the State, defendant, and the court itself, the court noted that there was no case law to support a jury instruction advising the jury that defendant was acquitted of the other-crimes conduct.

¶ 61 In support of his position, defendant points to *People v. Ward*, 2011 IL 108690, wherein the supreme court determined that the trial court abused its discretion by refusing to admit evidence of defendant's acquittal in a criminal sexual assault trial. Defendant relied on *Ward* in the trial proceedings, and the trial court distinguished *Ward* from the present case. We similarly find *Ward* distinguishable. In *Ward*, the defendant was charged and ultimately convicted for criminal sexual assault. Distinct from the case before us, in *Ward*, evidence of other sex crimes was admissible for the purpose of propensity. See 725 ILCS 5/115-7.3 (West 2006). In this case, however, the other-crimes evidence was not admissible for purposes of propensity. Rather, the evidence was introduced for a limited purpose of identity, possession, and knowledge.

¶ 62 Defendant also relies on *People v. Bedoya*, 325 Ill. App. 3d 926, 943 (2001), in support of his position that the jury should have been instructed that defendant was acquitted of the April conduct. In both *Bedoya* and *Ward*, the jury was instructed that the defendant was involved in an *offense*, which supported an inference that defendant had been charged and possibly convicted on the other-crimes conduct. See *Ward*, 2011 IL 108690, ¶ 45; *Bedoya*, 325 Ill. App. 3d at 943.

¶ 63 Here, however, the court carefully used the word "conduct" when instructing the jury. Prior to hearing Mathews testimony, the trial court instructed the jury as follows: "Evidence is about to be received that the defendant has been involved in *conduct* other than that charged in the information ***." (Emphasis added.) The court instructed the jury: "This evidence will be received on the issue of the defendant's identification and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that *conduct*, and if so,

what weight should be given to this evidence on the issue of identification." (Emphasis added.) Moreover, at the close of all evidence, the trial court instructed the jury as follows: "Evidence has been received that the defendant has been involved in *conduct* other than that charged in the information. This evidence has been received on the issues of the defendant's identification, knowledge, and possession, and may be considered by you only for those limited purposes. It is for you to determine whether the defendant was involved in that *conduct*, and if so, what weight should be given to this evidence on the issues of identification, knowledge, and possession." (Emphases added.)

¶ 64    In the case before us, the trial court did not use the word "offense." Rather, the court instructed the jury consistently with Illinois Pattern Jury Instruction No. 3.14 Committee Note 17, where the court used the word "conduct." See IPI Criminal, No. 3.14, Committee Note, at 17 (rev. Sept. 2019). Thus, defendant's reliance on *Ward* and *Bedoya* is misplaced.

¶ 65    Finally, defendant points to *People v. Rosado*, 2017 IL App (1st) 143741, ¶ 32, wherein the court noted: "nowhere does *Ward* limit its holding to prior cases of sexual assault admitted under section 115-7.3 or to cases involving emotional, wrenching testimony from sympathetic victims." While we agree with *Rosado* that there is no bright line rule regarding instructions on acquittal for sex crimes cases versus other criminal offenses, here, the testimony offered by Mathews, Sumption, and Reed did not rise to the level of "emotional, wrenching testimony from sympathetic victims" as the court considered in *Rosado*. *Id*. Rather, considering the multi-day trial as a whole, testimony related to the April conduct was minimal, and its relevance was not outweighed by any prejudicial impact.

¶ 66    Contrary to defendant's position both in the trial court below and on appeal before this court, defendant was not barred from cross-examining witnesses or presenting his own evidence

21

related to the April conduct. Rather, the trial court barred him from *offering the jury an instruction* advising the jury that defendant was acquitted on the April conduct. The trial court did not err by declining to offer such a nonpattern instruction to the jury. For all of these reasons, we find that the trial court did not abuse its discretion by allowing the other-crimes evidence to be admitted, nor did the trial court err by barring defendant from offering a jury instruction advising the jury that he was acquitted of the April conduct.

¶ 67                                    B. Sentencing

¶ 68    Next, defendant argues that his due process rights were violated when the trial court mistakenly applied an outdated statute that mandated consecutive sentencing and failed to apprise defendant of his right to elect to be sentenced under the amended statute in effect on the date of his sentencing hearing. We agree.

¶ 69    Following his conviction, the trial court sentenced defendant to 27 years in prison. The court noted that defendant committed the offense while out on bond in a separate matter in 15-CF-656. As such, the court noted that defendant was subject to mandatory consecutive sentencing under section 5-8-4 of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4 (West 2018)). However, as noted by defendant, and not disputed by the State, the statute was amended prior to defendant's sentencing hearing. The new statute gave the court discretion to impose concurrent sentences. 730 ILCS 5/5-8-4 (West 2022).

¶ 70    At the time defendant committed the offense, the Code provided for "mandatory" consecutive sentences, stating the trial court "shall" impose consecutive sentences in certain circumstances. 730 ILCS 5/5-8-4(d) (West 2018). The Code further provided, if a person charged with a felony committed a separate felony while on pretrial release, "then the sentences imposed upon conviction of these felonies shall be served consecutively." *Id.* § 5-8-4(d)(8). However,

22

before defendant's sentencing, the Code was amended to provide for "permissive" consecutive terms, stating the court "may" impose consecutive sentences in certain circumstances. Pub. Act 102-1104, § 90 (eff. Dec. 6, 2022) (amending 730 ILCS 5/5-8-4(c)). The amended Code further provided, if a person charged with a felony commits a separate felony while on pretrial release, "then the sentences imposed upon conviction of these felonies may be served consecutively." Pub. Act 102-1104, § 90 (eff. Dec. 6, 2022) (amending 730 ILCS 5/5-8-4(c)(3)).

¶ 71 A defendant has the right to be sentenced under either the law in effect at the time the offense was committed or the law in effect at the time of sentencing. *People v. Horrell*, 235 Ill. 2d 235, 242 (2009); *People v. Hollins*, 51 Ill. 2d 68, 71 (1972); *People v. Strebin*, 209 Ill. App. 3d 1078, 1081 (1991); see 5 ILCS 70/4 (West 2022) ("If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect."). Our supreme court has placed an affirmative duty on the trial court to advise a defendant of the right to elect the provision under which he or she should be sentenced, noting, in the absence of a showing a defendant was advised of that right of election and an express waiver of that right, the defendant is denied due process of law. *Hollins*, 51 Ill. 2d at 71. "Whether defendant was denied his right to elect involves the application of law to uncontested facts and is reviewed *de novo*." *People v. Vlahon*, 2012 IL App (4th) 110229, ¶ 16.

¶ 72 Defendant acknowledges that he did not object at sentencing or preserve this issue in a postsentencing motion. Therefore, he raises the issue under the second prong of plain error. However, even if the error does not rise to the level of plain error, " '[t]he imposition of an unauthorized sentence affects substantial rights' " and, thus, may be considered by a reviewing court even if not properly preserved in the trial court. *People v. Fort*, 2017 IL 118966, ¶ 19 (quoting

23

*People v. Hicks*, 181 Ill. 2d 541, 545 (1998)). In *Strebin*, the appellate court held, when a defendant is not advised of the right to elect, he or she cannot be found to have forfeited the issue on appeal. *Strebin*, 209 Ill. App. 3d at 1081; see *Vlahon*, 2012 IL App (4th) 110229, ¶ 15. Where the record is devoid of any evidence a defendant was aware of the right to elect, the defendant's sentences must be vacated and the cause remanded for a new sentencing hearing. See *People v. Anderson*, 93 Ill. App. 3d 646, 656 (1981).

¶ 73    Here, the record is devoid of evidence defendant was aware of his right to elect to be sentenced under either the law in effect at the time the offense was committed or the law in effect at the time of sentencing. Further, under *Strebin*, the matter cannot be forfeited. Therefore, we find that defendant was denied a fair sentencing hearing. Thus, the matter must be remanded for a new sentencing hearing. Accordingly, we vacate defendant's sentence and remand for a new sentencing hearing wherein defendant is advised of the right to elect the provision under which he should be sentenced. See *Hollins*, 51 Ill. 2d at 71.

¶ 74                                III. CONCLUSION

¶ 75    For the foregoing reasons, defendant's Champaign County conviction for armed habitual criminal is affirmed. However, we vacate defendant's sentence and remand for a new sentencing hearing in conformity with this order.

¶ 76    Conviction affirmed; sentence vacated; cause remanded.